UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

PARRIS MCKNIGHT, *et al.,*                )   Case No. 1:21-cv-01826
                                           )
*On behalf of themselves and all others*   )   JUDGE J. PHILIP CALABRESE
*similarly situated,*                       )
                                           )
                              Plaintiffs,   )
                                           )
*v.*                                        )
                                           )
ERICO INTERNATIONAL CORPORATION,           )
                                           )
                              Defendant.    )

## JOINT MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

Plaintiffs Parris McKnight, Dawn Adams, Matthew Bailey, Ryan Evans, Corey Green, Deresse Jackson, Latonya Jordan, Joshua Livingston, Michael Metz, Robert Metz, Frederick Midgley, Randi Robinson, Tia Robinson, and Tyronn Taylor (hereinafter also collectively referred to as "Plaintiffs") and Defendant Erico International Corporation (hereinafter also referred to as "Defendant" or "Erico") respectfully and jointly move the Court to (1) preliminarily approve the proposed settlement of two groups of Settlement Class Members' claims pursuant to Fed. R. Civ. P. 23(e), (2) approve a proposed notice to potential Settlement Class Members, (3) appoint proposed Class Counsel SCOTT & WINTERS LAW FIRM as interim Class Counsel; and (4) schedule a Fairness Hearing. A Proposed Order Granting Preliminary Approval of Settlement is attached as Exhibit C. The Parties' Memorandum in Support is attached.

Respectfully submitted,

<table>
<tr>
<td>

*/s Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221   F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs and*
*Proposed Interim Class Counsel*

</td>
<td>

*/s    Carrie A. McAtee    (via email*
*consent)*
Carrie A. McAtee (MO 54949)
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108
Ph: (816) 559-2512
Email: cmcatee@shb.com

Gust Callas (0015815)
BLACK, MCCUSKEY, SOUERS &
ARBAUGH
220 Market Avenue South, Suite 1000
Canton, Ohio 44702
Ph: (330) 456-8341
Fax: (330) 456-5756
Email: gcallas@bmsa.com

*Counsel for Defendant*

</td>
</tr>
</table>

# TABLE OF CONTENTS

Table of Contents ..................................................................................................................... iii

Table of Authorities ................................................................................................................ v

Memorandum in Support .......................................................................................................... 1

I.  Introduction ..................................................................................................................... 1

II.  The Litigation .................................................................................................................. 4

    A.  The Claims and Issues ............................................................................................ 4

    B.  Investigation, Discovery, Document Analysis, and Research ................................ 6

    C.  Settlement Negotiations .......................................................................................... 7

III.  The Terms of the Settlement and Release of Claims ...................................................... 8

    A.  The Scope of Settlement ......................................................................................... 8

    B.  The Proposed Settlement Payments and Distributions ........................................... 8

IV.  The Propriety of Approval .............................................................................................. 12

    A.  The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b) ..................................................................................................... 12

    B.  The Proposed Settlement Qualifies for Preliminary Approval under Rule 23 ..... 14

        1.  Approval of the Proposal Under Civil Rule 23(e)(2) ................................ 16

            a.  Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A) ............................................... 17

            b.  Arm's Length Negotiation – Rule 23(e)(2)(B) ............................ 17

            c.  The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i) .......................... 18

            d.  The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii) ......... 19

            e.  The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii) ........ 20

            f.  The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule

                    23(e)(2)(C)(iv) ............................................................................ 25

        g.      The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D) ............................................................ 25

      2.      Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii) ..................... 26

  C.      The Service Awards are Proper and Reasonable ................................................... 29

  D.      The Proposed Notice Should Be Approved – Rule 23(c)(2)(B) ........................... 31

  E.      The Court Should Appoint SCOTT & WINTERS LAW FIRM as Interim Class Counsel. ........................................................................................................ 32

V.     Conclusion ........................................................................................................................ 33

Certification of Compliance........................................................................................................ 35

Certificate of Service ................................................................................................................. 35

# TABLE OF AUTHORITIES

**Cases**

*Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053 (Nov. 18, 2019) ..................................................................... 29

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ......... 29

*Anderson v. S. Home Care Servs.*, N.D.Ga. No. 1:13-CV-0840-LMM, 2016 U.S. Dist. LEXIS 195946 (June 7, 2016) ................................................................................. 5

*Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474 (N.D. Ohio Oct. 17, 2018) ........................................................................................................... 24

*Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426 (6th Cir.2013) ...................... 27

*Ayala v. Tito Contrs., Inc.,* 82 F. Supp. 3d 279 (D.D.C.2015) ....................................................... 5

*Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657 (Mar. 26, 2019) ............................................................................... 18, 23, 25

*Bassett v. TVA,* W.D.Ky. No. 5:09-CV-00039, 2013 U.S. Dist. LEXIS 83203 (June 13, 2013) ............................................................................................................. 5

*Blasi v. United Debt Servs., LLC,* S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201 (Nov. 15, 2019) .................................................................................... 28

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................................ 21

*Bredbenner v. Liberty Travel, Inc.,* D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663 (Apr. 8, 2011) ............................................................... 30

*Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730 (Nov. 8, 2018) ............................................................................................. 23

*Busby v. Bonner,* W.D.Tenn. No. 2:20-cv-2359-SHL-atc, 2021 U.S. Dist. LEXIS 173421 (Jan. 28, 2021) .............................................................................................. 16

*Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221 (July 27, 2018) ............................................................................................. 23

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008 (S.D.Ohio Jan.26, 2011) ............................................................................. 22

*Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237 (Oct. 4, 2017) ............................................................................... 13

*Crawford v. Lexington-Fayette Urban Cty. Govt.*, E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070 (Oct. 23, 2008) .................................................................................. 13

*Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546 (D.N.J.2010) ................................... 30

*Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446 (Mar. 8, 2010) .................................................................... 22, 24, 27

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)................. 31

*Fegley v. Higgins,* 19 F.3d 1126 (6th Cir. 1994) ......................................................... 21

*Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D.Ohio 2008)........................................ 22

*Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220 (July 2, 2020) ........................................................................ 16

*Gentrup v. Renovo Servs., LLC*, S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887 (June 24, 2011)........................................................................................ 13

*Glazer v. Whirlpool Corp.*, 678 F.3d 409 (6th Cir.2012) ....................................... 15, 26

*Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir.1992) ........................... 13

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007) ...................................... 14, 18

*Hardimon v. Erico International Corporation*, N.D. Ohio Case No. 1:20-cv-00246 .......... 1, 6, 27

*Hebert v. Chesapeake Operating, Inc.*, S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792 (Sep. 20, 2019)....................................................................... 23

*Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275 (Oct. 26, 2016)....................................................................... 13

*Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616 (S.D.Cal. 2005)........................ 18

*Herrera v. Wells Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS (MRWx), 2021 U.S. Dist. LEXIS 170195 (June 8, 2021).................................................................. 16

*In re Am. Med. Sys., Inc.*, 75 F.3d 1069 (6th Cir. 1996)......................................... 17, 27

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369 (S.D. Ohio 2006) ...................... 14

*In re Dun & Bradstreet Credit Servs. Customer Litigation,* 130 F.R.D. 366 (S.D.Ohio 1990) ........................................................................................................ 30

*In re MyFord Touch Consumer Litig.*, 2019 U.S. Dist. LEXIS 53356 (N.D. Cal. Mar. 29, 2019) ..................................................................................................... 16

*In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347 (E.D.N.Y. 2000) ................................. 18

*Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................. 13

*Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D.Ohio 2008) ................................. 22

*Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D.Ohio Jan. 26, 2017) ................................. 12, 15

*Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D.Ohio May 30, 2012) ................................. passim

*Landsberg v. Acton Ents.*, S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544 (June 16, 2008) ................................. 12

*Lonardo v. Travelers Indemnity Co.*, 706 F. Supp. 2d 766 (N.D.Ohio 2010) ................................. 15, 22

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ................................. 12

*Macaluso v. Zirtual Startups, LLC,* S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243 (Aug. 17, 2021) ................................. 23

*McGhee v. Allied Waste Indus.*, Case No. 1:07CV1110 (N.D.Ohio 2007) ................................. 22

*Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D.Ohio May 4, 2018) ................................. 12, 23, 29

*Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092 (W.D.N.Y. June 10, 2019) ................................. 16

*Rawlings v. Prudential-Bache Properties*, 9 F.3d 513 (6th Cir.1993) ................................. 22

*Redington v. Goodyear Tire & Rubber Co.*, 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461 (N.D. Ohio August 22, 2008) ................................. 13

*Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 2008) ................................. 21

*Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912(June 15, 2010) ................................. 20, 23, 29

*Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800 (Mar. 8, 2018) ................................. 29

*Schilling v. Schmidt Baking Co.,* D.Md. Civil Action No. TDC-16-2498, 2018 U.S. Dist. LEXIS 121976 (July 20, 2018) ................................. 5

*Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS

35584 (Mar. 13, 2017) ............................................................................................ 13, 14

*Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) ....... 24

*Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116 (N.D.Ohio Feb. 22, 2016) ................ 26

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450
        (July 11, 2014) ............................................................................................................. 22

*Swinton v. SquareTrade, Inc.*, 2019 U.S. Dist. LEXIS 25458 (S.D. Iowa Feb. 14, 2019) .......... 16

*Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391 (Sep. 12,
        2007) ............................................................................................................................ 28

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local
        307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495 (6th Cir.1984) ..................... 21

*Vertrue v. Vertrue, Inc. (In re Vertrue Marketing & Sales Practices Litigation),* 719 F.3d
        474 (6th Cir.2013) ........................................................................................................... 5

*Whittington v. Taco Bell of Am., Inc.*, D.Colo. Civil Action No. 10-cv-01884-KMT-MEH,
        2013 U.S. Dist. LEXIS 161665 (Nov. 13, 2013) ........................................................... 30

*Wright v. Premier Courier, Inc.*, S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS
        140019 (Aug. 17, 2018) .................................................................................................. 23

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012) ................................... 17, 27, 29

**Statutes**

29 U.S.C. § 207 ...................................................................................................................... 4

29 U.S.C. § 216 .............................................................................................. 3, 12, 13, 21

O.R.C. § 4111.03 ............................................................................................................. 2, 4

O.R.C. § 4111.10 ........................................................................................................... 4, 21

**Other Authorities**

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends
        III: What Explains Settlements in Shareholder Class Actions? (National
        Economic Research Assocs. (NERA) June 1995) .................................................... 22, 24

Manual for Complex Litigation at § 21.312 ......................................................................... 3, 31

Newberg on Class Actions § 11:38 ...................................................................................... 30

**Rules**

Fed. R. Civ. P. 23 ................................................................................................................ passim

<u>**MEMORANDUM IN SUPPORT**</u>

## I.   INTRODUCTION

The *Confidential Class/Collective Action Settlement Agreement and Release*

("Settlement" or "Settlement Agreement"), filed with this Court as Exhibit A, calls for an opt-out

Settlement pursuant to Fed. R. Civ. P. 23 for allegations pertaining to overtime wage law claims.

The Settlement will apply to Plaintiffs and to all other members of two proposed Settlement

Classes (collectively referred to as "Settlement Classes" or "Class Members"). *Rule 23 Subclass*

*1*, consisting of Rule 23 Class Members who do not exclude themselves from the Settlement

includes:

> [A]ll former and current non-exempt production employees of Defendant Erico
> International Corporation who worked at Defendant's ECN and/or ESN
> manufacturing facilities in Solon, Ohio at any time between February 5, 2018 to
> April 18, 2020, excluding such employees who released Ohio wage and hour law
> claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon
> v. Erico International Corp.*, Case No. 1:20-cv000246-PAB.

(*See* Settlement Agreement, Ex. A at 8-9.) The *Rule 23 Subclass 2*, consisting of Rule 23 Class

Members who do not exclude themselves from the Settlement includes:

> [A]ll former and current non-exempt production employees of Defendant Erico
> International Corporation who worked at Defendant's ECN and/or ESN
> manufacturing facilities in Solon, Ohio at any time between April 19, 2020 to
> April 1, 2022, excluding such employees who released Ohio wage and hour law
> claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon
> v. Erico International Corp.*, Case No. 1:20-cv000246-PAB.

(*Id.* 9.) In addition, this Settlement covers Plaintiffs' and FLSA Collective Action Members'

overtime claims, individuals who previously provided consent forms to become party opt-in

Plaintiffs in this case ("FLSA Collective Action Members'"), consisting of two FLSA settlement

Classes defined as:

> *FLSA Collective Action Subclass 1* – All persons who have given timely consent
> in writing to become a party Plaintiff in the Action, whose opt-in consent form

was filed in this matter on or prior to April 1, 2022 (including but not limited to all Named Plaintiffs) and who worked as a non-exempt employee at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between June 29, 2017 and April 18, 2020; and

*FLSA Collective Action Subclass 2* – All persons who have given timely consent in writing to become a party Plaintiff in the Action, whose opt-in consent form was filed in this matter on or prior to April 1, 2022 (including but not limited to all Named Plaintiffs) and who worked as a non-exempt employee at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between April 19, 2020 and April 1, 2022.

(*Id.* at 6.) *Rule 23 Subclass 1* Members include FLSA Collective Action Subclass 1 Members, and, likewise, *Rule 23 Subclass 2* Members include FLSA Collective Action Subclass 2 Members. (*Id.* at 8-9.)

The Settlement, achieved with the assistance of esteemed Mediator Frank A. Ray, *Esq.*, resolves *bona fide* disputes involving overtime compensation under the FLSA and corresponding provisions of Ohio wage-and-hour law, O.R.C. § 4111.03. Plaintiffs alleged that they and other hourly employees of Erico are owed unpaid overtime compensation. (*See* ECF #1, Class and Collective Action Complaint at ¶¶ 47-62.) Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF #15, Def.'s Answer to Compl.)

The potential Class Members will receive notice of their right to participate in the settlement containing, among other pertinent information, the nature of the action; the definition of the classes certified; a summary of the claims, issues, and defenses; the benefits provided to class representatives; information regarding attorney's fees; notice that class members may enter an appearance through an attorney if they so desire; notice to class members that the court will exclude from the class any member who requests exclusion; identification of the time and manner for requesting exclusion; and an explanation of the binding effect of a class judgment on members under Rule 23(c)(3). (*See* Ex. B, Proposed Notice.) Furthermore, potential class

members will receive a tailored notice that identifies each class member's participation in one or more of the settlement classes, as well as provides for each recipient-potential class member's projected individual settlement payment amount (*see* Manual for Complex Litigation at § 21.312, noting that a class notice should provide information that will enable the Class Members to calculate individual recoveries), and prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries. (*Id.*)  Each potential Class Member will receive notice so that all potential Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against Defendant. (*Id.*)

The case was hotly contested and settlement was achieved only through difficult negotiations, data production and comprehensive analysis of relevant records, a full day mediation with esteemed Mediator Frank A. Ray, and additional consideration of the issues, claims, and defenses in the matter prior to each parties' acceptance of a mediator's proposal several days later. The Settlement is fair, reasonable, and adequate and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b), and Rule 23(e). If approved by the Court, the Settlement will provide individual settlement payments to Class Members representing a substantial percentage of their claimed but disputed damages.

The following settlement documents and proposed order are submitted for approval or entry by the Court:

| | |
|---|---|
| Exhibit A: | Confidential Class/Collective Action Settlement Agreement and Release ("Settlement Agreement,"); |
| Exhibit B: | Proposed Notice of Class Action Settlement and Fairness Hearing; |

| Exhibit C: | Proposed Order Granting Preliminary Approval of Settlement ("Preliminary Approval Order," providing for notice and hearing); and |
| --- | --- |
| Exhibit D: | Declaration of Plaintiffs' / Proposed Class Counsel (hereinafter "Class Counsel"). |

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## II. THE LITIGATION

### A. The Claims and Issues

Plaintiffs Parris McKnight, Dawn Adams, Matthew Bailey, Ryan Evans, Corey Green, Deresse Jackson, Latonya Jordan, Joshua Livingston, Michael Metz, Robert Metz, Frederick Midgley, Randi Robinson, Tia Robinson, and Tyronn Taylor filed their Class and Collective Action Complaint on September 27, 2021. (Compl., ECF #1.) Plaintiffs' Complaint alleged that they and other similarly situated employees were willfully not paid for all time worked, including compensable time at the beginning and end of their shifts, as a result of Defendant's alleged unlawful time editing and rounding policies, and are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*Id.* at ¶¶ 47-62.) Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF #15, Answer to Compl.)

Specifically, Plaintiffs argued that Defendant only paid workers at the shift starting time, and stopped paying workers at the shift ending time, regardless of the fact that workers were allegedly clocked in and working prior to, and after, the shift times. Plaintiffs argued that this practice occurred across the board, and during the entire relevant time period as to *Rule 23 Subclass 1*. Defendant argued in response, and among other things, that there is no evidence that *Rule 23 Subclass 1* Members performed any pre- or post-shift work for which they were not

compensated and insisted that proving such allegations on a class basis would be unsurmountable. Moreover, both Parties deeply disputed the application of Sixth Circuit and other relevant authority pertaining to tolling of statute of limitations where a prior class action reached settlement after no Rule class certification motion was filed, *see, e.g., Vertrue v. Vertrue, Inc. (In re Vertrue Marketing & Sales Practices Litigation),* 719 F.3d 474 (6th Cir.2013), *contra Potter v. Commissioner of Social Security,* 9 F.4th 369, n.4 (6th Cir. 2021) (citing *China Agritech, Inc. v. Resh,* -- U.S. --, 138 S. Ct. 1800, 1806-09, 201 L.Ed.2d 123 (2018)); , as well as application of tolling where a plaintiff argued that extraordinary circumstances necessitated tolling of FLSA claims, *see, e.g., Schilling v. Schmidt Baking Co.,* D.Md. Civil Action No. TDC-16-2498, 2018 U.S. Dist. LEXIS 121976, at *24-25 (July 20, 2018); *Bassett v. TVA,* W.D.Ky. No. 5:09-CV-00039, 2013 U.S. Dist. LEXIS 83203, at *17 (June 13, 2013); *Ayala v. Tito Contrs., Inc.,* 82 F. Supp. 3d 279, 291-292 (D.D.C.2015).

As to *Rule 23 Subclass 2*, as of March 13, 2020, Defendant implemented COVID-19 safety protocols that included shift staggering. Pursuant to this protocol, employees were required to clock out and leave Defendant's facility 15 minutes prior to the end of their scheduled shift time so that they would not have contact with employees arriving to work for the next shift. This shift staggering protocol made it impossible, from Defendant's perspective, for any non-exempt hourly employee to have worked any unpaid pre-shift or post-shift time as of March 13, 2020. Nevertheless, in an effort to  provide consideration for a release of claims from March 13, 2020 (after which Defendant's timekeeping and payroll system made it virtually impossible for employees to work off the clock), Defendant has agreed to a compromise resolution of any potential wage and hour claims during this time period.

This case follows the matter of *Hardimon v. Erico International Corporation*, N.D. Ohio Case No. 1:20-cv-00246 ("*Hardimon*"), where Defendant resolved the claims of seventy-six (76) hourly workers of Defendant. On September 7, 2021, the *Hardimon* court approved the settlement pursuant to the FLSA, 29 U.S.C. § 216(b), solely as to the seventy-six (76) individuals who filed or joined the matter by submitting consent forms pursuant to § 216(b). However, while the individuals who participated in the *Hardimon* settlement released their state and federal wage-related claims, Class Members in this matter, including the Named and Opt-in Plaintiffs who did not participate in the *Hardimon* settlement, sought to exercise their rights to allegedly unlawfully withheld overtime wages and additional statutory liquidated damages in this litigation.

### B. Investigation, Discovery, Document Analysis, and Research

Prior to and following the Case Management Conference on December 7, 2021 (*see* ECF #24), the parties exchanged positions on a proposed sample set selection process for streamlining discovery for mediation purposes. Ultimately, Defendant produced Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately 10,168,000 data points for approximately 453 of Defendant's hourly, non-exempt workers, and "LegacyTimekeeping Sample" data comprised of approximately 30,000 data points for approximately 60 of Defendant's hourly, non-exempt workers. In addition, prior to production, Defendant hired temporary employees to perform manual data entry to convert data from Defendant's legacy timekeeping system to Microsoft Excel. This manual data entry was expensive, time consuming and laborious, but this process was nonetheless the most effective and efficient way to provide a representative sample of the data. Class Counsel further electronically transcribed the data production and records into a format that allowed Plaintiffs to create a computation and analysis

considering millions of data points based off the timekeeping and payroll records provided and permitted a calculation of the alleged unpaid wages for the Plaintiffs and similarly situated hourly employees of Defendant for each of the subclasses.

In advance of the mediation, Plaintiffs provided a comprehensive written itemization of damages and settlement demand and Defendant provided a response to the demand, and each of the Parties provided the mediator with these demand / mediation conference memoranda pursuant to the mediator's instruction.

As above, the Parties engaged in comprehensive discovery of the relevant wage and hour records, and a comprehensive analysis regarding the Plaintiffs' claims and the Defendant's defenses to these claims. Class Counsel also conducted extensive investigations into the facts before and during the prosecution of the Action. This discovery and investigation has included, among other things, (a) multiple meetings and conferences with the Court, Plaintiffs, and Defendant's Counsel; (b) inspection and analysis of a statistically significant sample of class-wide documents produced by the Defendant, including analysis of wage-and-hour information and other data and documents and development of a data analysis and methodology comprising of over 10,000,000 data points from the records produced by Defendant; (c) analysis of the legal positions taken by Defendant; (d) investigation into the viability of class treatment and collective action treatment; (e) analysis of potential class-wide damages; and (f) research of the applicable law with respect to the claims and potential defenses thereto.

Plaintiffs have vigorously prosecuted this case, and Defendant has vigorously contested it. The Parties have engaged in sufficient investigation and discovery to assess the relative merits of the claims and of Defendant's defenses to them.

### C. Settlement Negotiations

Settlement negotiations were arduous and contentious. In advance of the mediation, Plaintiffs prepared and submitted a comprehensive mediation position statement and demand addressing merits and damages issues. A full day mediation with esteemed Mediator Frank A. Ray, a very seasoned and experienced attorney and mediator, on April 1, 2022 was successful in achieving a settlement on April 4, 2022 after each parties' consideration and acceptance of the mediator's proposal and recommendation. Subsequent to the mediation, the Parties drafted settlement documents for filing with the Court, including the Confidential Class/Collective Action Settlement Agreement and Release (Ex. A).

## III.  THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A.  The Scope of Settlement

If approved by the Court, the proposed Settlement will resolve disputed claims between the Parties. The Settlement will resolve FLSA, 29 U.S.C. § 201, *et seq.,* and Ohio wage-and-hour claims of the Named Plaintiffs and all other members of the proposed Settlement Classes pursuant to Fed. R. Civ. P. 23(e). As highlighted below, Class Counsel and Defense Counsel believe that certification and Settlement are appropriate because the released claims are being compromised without need to establish the elements of those claims on which liability turns, in addition to providing a substantial recovery to Class/Collective Action Members in light of the procedural and substantive encumbrances underscored by Defendant. Named Plaintiffs and Class Counsel believe the claims asserted in the matter have merit and that the evidence developed to-date supports the claims asserted. Plaintiffs and Class Counsel, however, also recognize the risk and expense of trying and, if necessary, appealing this action, and believe that the Settlement confers substantial benefits upon the Class/Collective Members.

### B.  The Proposed Settlement Payments and Distributions

**Gross Settlement Amount.** Defendant has agreed to pay the Gross Settlement Amount as set forth in the Settlement Agreement. (Ex. A at 6, 11 ¶ 3.) That sum will be used to make settlement payments to the Plaintiffs and other members of the proposed Settlement Classes which shall constitute adequate consideration for the Settlement and will be made in full and final settlement of: (1) the claims released by Plaintiffs, FLSA Collective Action Members and other Rule 23 Class Members of each of the *Rule 23 Subclasses I* and *II*; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of administration; (4) service awards to the Named Plaintiffs; and (5) any other obligations of Defendant under the Settlement Agreement.

**Payments to Settlement Class Members.** *Rule 23 Subclass 1* Members[1] will be paid as set forth in the Settlement Agreement. As to the *Rule 23 Subclass 1*, according to Class Counsel's calculations, based on Defendant's data, the Settlement amount for the Class, and an average hourly rate of $22.82, Class Members will receive approximately 159% of their alleged but disputed wage damages were they to have worked an additional 5 minutes per day off the clock, 99% of their alleged but disputed wage damages were they to have worked an additional 8 minutes per day off the clock, or 80% of their alleged but disputed wage damages were they to have worked an additional 10 minutes per day off the clock, an approximate average gross recovery of approximately ▮▮▮▮▮▮ per *Rule 23 Subclass 1* member based on an estimated total *Rule 23 Subclass 1* settlement class of approximately 397 employees. As to *Rule 23 Subclass 1*, payments to Class Members are based proportionally on each Class Member's respective weeks of service to Defendant Erico from February 5, 2018 to April 18, 2020. (*See* Ex. A at 10.) In

---

[1] The data Defendant produced in discovery included Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately 10,168,000 data points for approximately 453 of Defendant's hourly workers, and "Legacy Timekeeping Sample" data comprised of approximately 30,000 data points for approximately 60 hourly workers. As provided in the Settlement Agreement (Ex. A at 3-4, 13-14, 17-18), Defense Counsel will provide updated "Class Data" sufficient to enable the Administrator and Class Counsel to determine each Class/Collective Member's Settlement Share 14 calendar days after preliminary approval is issued. (*See id.*)

addition, FLSA Collective Action Members (who are also Rule 23 Class Members) will receive additional compensation for the approximate claimed but disputed third year of recovery (including claimed but disputed liquidated damages as applicable). *See* 29 U.S.C. § 216(b).

In addition, *Rule 23 Subclass 2* Members will be paid as set forth in the Settlement Agreement resulting in an approximate average gross recovery of ██████████ per *Rule 23 Subclass 2* Member based on the information currently available. *Rule 23 Subclass 2* members will receive consideration for release of claims notwithstanding the practical and legal reality that these class members have virtually no damages during the release period – as of March 13, 2020, Defendant implemented COVID-19 safety protocols that included shift staggering. Pursuant to this protocol, employees were required to clock out and leave Defendant's facility 15 minutes prior to the end of their scheduled shift time so that they would not have contact with employees arriving to work for the next shift. This shift staggering protocol made it impossible, from Defendant's perspective, for any non-exempt hourly employee to have worked any unpaid pre-shift or post-shift time as of March 13, 2020. Nevertheless, in an effort to  provide consideration for a release of claims from March 13, 2020 (after which Defendant's timekeeping and payroll system made it virtually impossible for employees to work off the clock), Defendant has agreed to a compromise resolution of any potential wage and hour claims during this time period.

As to *Rule 23 Subclass 1*, inherent in the proposed distribution method in which Class Members are distributed settlement payments based proportionally on each Class Member's respective weeks of service to Defendant Erico during the relevant period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). As to *Rule 23 Subclass 2*, each settlement class member will receive an equal share of settlement

proceeds in consideration for their release of claims. Plaintiffs and FLSA Collective Action Members, as also each members of the Settlement Class to the extent they were employed during the applicable time periods with Defendant, will participate in this recovery under the same procedure applicable to other Class Members with an additional approximate claimed but disputed third year of recovery and claimed but disputed liquidated damages as provided for by the FLSA. Importantly, this is not a "claims-made" settlement. All potential Class Members who do not exclude themselves from the settlement will receive a settlement check.

**Service Awards.** The proposed Settlement provides for a service award to Named Plaintiffs Parris McKnight, Deresse Jackson, Frederick Midgley, Matthew Bailey, Latonya Jordan, Michael Metz, Randi Robinson, Dawn Adams, Tyronn Taylor, Joshua Livingston, Ryan Evans, Tia Robinson, Robert Metz, and Corey Green in the amounts set forth in the Settlement Agreement in recognition of their assistance to Class Counsel and their contribution to achieving the Settlement on behalf of all Class Members. Named Plaintiffs and Class Counsel represent that the proposed service awards are well-earned. Among other things, Named Plaintiffs and Class Counsel represent that: (1) each of the Named Plaintiffs consulted with Class Counsel at critical stages and provided important and necessary documents and/or information throughout the course of the litigation; (2) Named Plaintiff Parris McKnight, in particular, additionally reached out to Class Counsel to institute this litigation, responded to dozens of phone calls and inquiries from many opt-ins and potential class members, attended the April 1, 2022 mediation in person at Class Counsel's office, faithfully represented all class members interests throughout the pendency of this matter, and provided important information and integral insight to Class Counsel throughout the course of the litigation and (3) each of the Named Plaintiffs' contributions were instrumental in enabling Class Counsel to negotiate the proposed Settlement.

**Attorneys' Fees and Cost Reimbursements.** Class Counsel will seek attorneys' fees and costs as set forth in the Settlement Agreement. After reductions for litigation expenses, the proposed attorney fee recovery will equal approximately 32.6% of the Gross Settlement Amount. (*See* Ex. D, Declaration of Counsel at ¶ 33.) The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Plaintiffs' / Proposed Class Counsel. (*Id.*) As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 20 ¶ 8(d), 22 ¶ 9.)

**Costs of Administration.** From the Gross Settlement Amount, Settlement Administrator Rust Consulting will receive ████████ to administrate the settlement. (*Id.* at 28 ¶ 11.)

## IV.   THE PROPRIETY OF APPROVAL

### A.  The Proposed Settlement Qualifies for Court Approval under the FLSA, 29 U.S.C. § 216(b)

This settlement qualifies for Court approval under the FLSA, 29 U.S.C. § 216(b), as to the Plaintiffs and other FLSA Collective Action Members. Most courts approve FLSA settlements in a single step.  In an FLSA settlement, the Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Jackson v. Trubridge, Inc.*, N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D.Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D.Ohio May 30, 2012)); *Osman v. Grube, Inc.*, N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D.Ohio May 4, 2018). *Accord Landsberg v. Acton Ents.,* S.D.Ohio No. C2-05-500, 2008 U.S. Dist. LEXIS 51544, at *2, fn. 1 (June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)).

In *Sharier v. Top of the Viaduct, LLC,* N.D. Ohio No. 5:16-cv-343, 2017 U.S. Dist. LEXIS 35584, at *4 (Mar. 13, 2017) (citing *Crawford v. Lexington-Fayette Urban Cty. Govt.,* E.D.Ky. No. 06-299-JBC, 2008 U.S. Dist. LEXIS 90070, at *3 (Oct. 23, 2008), citing *Int'l Union, United Auto., Aerospace, and Agr. Workers of Am. v. Gen. Motors Corp.,* 497 F.3d 615, 631 (6th Cir. 2007) (further citation omitted)), a court within this district and division used seven factors to evaluate whether the proposed settlement was fair and reasonable for purposes of the FLSA, 29 U.S.C. 216(b): "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery engaged in, the likelihood of success on the merits, and the public interest in settlement." *See also Cooper v. Winking Lizard, Inc.,* N.D.Ohio No. 1:16CV1513, 2017 U.S. Dist. LEXIS 169237, at *5 (Oct. 4, 2017); *Hedglin v. Maxim Healthcare Servs.,* N.D. Ohio No. 4:15-cv-2614, 2016 U.S. Dist. LEXIS 148275, at *3-4 (Oct. 26, 2016). "The court may choose to consider only factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *Cooper,* 2017 U.S. Dist. LEXIS 169237, at *5 (quoting *Gentrup v. Renovo Servs., LLC,* S.D.Ohio No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *3 (June 24, 2011)); *Crawford,* 2008 U.S. Dist. LEXIS 90070, at *13-14 (quoting *Redington v. Goodyear Tire & Rubber Co.,* 2008 U.S. Dist. LEXIS 64639, 2008 WL 3981461, at *11 (N.D. Ohio August 22, 2008), citing *Granada Invest., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205-1206 (6th Cir.1992)).

A key factor – the likelihood of success on the merits balanced against the amount and form of the settlement – strongly supports approval. Litigating wage and hour claims is always risky and uncertain, and Plaintiffs would have to establish not only Defendant's liability, which Defendant vehemently denies, but also each employees' damages. Of particular contention in this specific case is the factual and legal dispute as to whether the covered workers performed

pre-shift compensable work each day, in addition to the amounts of these times. The outcome of

litigating the case would be uncertain, and the risks of continued litigation would be high. In

contrast, the Settlement assures that the covered employees will receive significant

compensation. Given the uncertainties surrounding trial in this matter, the certainty and finality

of a settlement that will substantially benefit the covered employees is in the public interest. *See*

*Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement

"ends potentially long and protracted litigation") (citing *In re Broadwing, Inc. ERISA Litig.*, 252

F.R.D. 369, 369 (S.D. Ohio 2006); *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio

2007)). The proposed Settlement will eliminate the risk and delay of litigation and make

substantial payments available to the Plaintiffs and opt-ins in this action.

The other six factors are satisfied as well. Wage-and-hour cases for groups of employees

are always expensive and time-consuming and the expense and likely duration of continued

litigation strongly favor approval. Class Counsel have extensive experience litigating FLSA

claims, and there is no fraud or collusion. The Parties engaged in comprehensive discovery,

substantial document review, comprehensive data analysis, due diligence prior to arduous

negotiations, mediation before a mediator known for his experience and expertise in resolving

employment, including wage and hour, cases, and the issues were well understood. The

settlement was reached as a result of arms-length negotiation between Parties represented by

competent counsel. *See Sharier*, 2017 U.S. Dist. LEXIS 35584, at *5. Counsel on both sides

support the Settlement, as do the Plaintiffs themselves. (*See* Exs. A, D.)

### B. The Proposed Settlement Qualifies for Preliminary Approval under Rule 23

"Class actions are meant to serve the public interest by providing an incentive for lawyers

and class representatives to litigate on behalf of a group of people whose injury is legitimate and

meaningful, but whose individual damages are not substantial enough to make litigation on an individual basis worthwhile." *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 782 (N.D.Ohio 2010). Amended Fed. R. Civ. P. 23 requires a two-fold determination for preliminary approval of the class action. Rule 23 authorizes the Court to certify a class if it satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequate representation— and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Glazer v. Whirlpool Corp*., 678 F.3d 409, 416 (6th Cir.2012). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate…" *See, e.g., Jackson,* 2017 U.S. Dist. LEXIS 193782, at *4, 6 (scheduling a fairness hearing and granting preliminary approval of a class settlement upon the ground that it was "'fair, reasonable, and adequate' to all participants").

Rule 23(e), effective December 1, 2018, explicitly addresses preliminary approval. The Rule now provides:

**(e) Settlement, Voluntary Dismissal, or Compromise.** The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) *Notice to the Class.*

(A) *Information That Parties Must Provide to the Court.* The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) *Grounds for a Decision to Give Notice.* The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.

As above, the Court must address two questions at the preliminary approval stage: (i) whether it "will likely be able to . . . approve the proposal under Rule 23(e)(2)"; and (ii) whether it "will likely be able to . . . certify the class for purposes of judgment on the proposal." *Id.* Courts have treated the amended standard as superseding the varying "preliminary approval" standards that courts had developed based on decisional law. *See Fitzgerald v. P.L. Marketing,* W.D.Tenn. No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 117220, at *12, fn. 1 (July 2, 2020) ("Rule 23(e) was substantially amended to provide an enumerated 'shorter list of core concerns' for courts to focus on when evaluating whether a proposed class action settlement is fair.") (citing *see* Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes); *Busby v. Bonner,* W.D.Tenn. No. 2:20-cv-2359-SHL-atc, 2021 U.S. Dist. LEXIS 173421, at *8 (Jan. 28, 2021); *Herrera v. Wells Fargo Bank, N.A.,* C.D.Cal. No. SACV 18-332JVS(MRWx), 2021 U.S. Dist. LEXIS 170195, at *21 (June 8, 2021); *Padovano v. FedEx Ground Package Systems*, 2019 U.S. Dist. LEXIS 107092, *6-7 (W.D.N.Y. June 10, 2019); *In re MyFord Touch Consumer Litig*., 2019 U.S. Dist. LEXIS 53356, *14-16 (N.D. Cal. Mar. 29, 2019); *Swinton v. SquareTrade, Inc*., 2019 U.S. Dist. LEXIS 25458, *13-15 (S.D. Iowa Feb. 14, 2019).

The proposed Settlement satisfies the above prerequisites and standards, as shown below.

### 1.     Approval of the Proposal Under Civil Rule 23(e)(2)

When evaluating whether the Court *will likely be able to* "approve the proposal under Rule 23(e)(2)," the court applies amended Rule 23(e)(2)'s approval factors. Rule 23(e) states:

> (2) *Approval of the Proposal.* If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

These factors are addressed in turn.

### a. Adequacy of Representation by Class Counsel and Class Representatives – Rule 23(e)(2)(A)

Named Plaintiffs have aggressively pursued the interests of Class Members in this case, and their counsel have extensive experience in class action litigation including wage-and-hour cases. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)). As explained above, class representatives and Named Plaintiffs, and Class Counsel have adequately represented the class, including but not limited to engaging in substantial document review, comprehensive data analysis, and due diligence prior to arduous negotiations, and achieved what they believe is an exceptional result for Class Members. (*See* Ex. D, Declaration of Counsel at ¶¶ 18-23.)

### b. Arm's Length Negotiation – Rule 23(e)(2)(B)

Advisory Committee Notes provide that this factor considers whether negotiations "were conducted in a manner that would protect and further the class interests." "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations

were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D.Ohio 2007) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc*., 225 F.R.D. 616, 621 (S.D.Cal. 2005); *In re Toys R Us Antitrust Lit*., 191 F.R.D. 347, 352 (E.D.N.Y. 2000)); *accord Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *6 (Mar. 26, 2019).

The settlement here was reached as a result of arm's length negotiation through the assistance of Frank A. Ray, a very seasoned and experienced attorney and mediator[2] who has mediated complex wage and hour cases. The Parties engaged in extensive document discovery and tedious analyses of damages-related documents and data. The Parties were represented by law firms with extensive litigation and wage and hour experience. Class Counsel certifies that the Settlement Agreement resulting from these negotiations was reached at arm's length and is one that is fair and reasonable to Class Members. This factor is likely to be satisfied.

### c. The Relief is Adequate, Taking into Account the Costs, Risks, and Delay of Trial and Appeal – Rule 23(e)(2)(C)(i)

Advisory Committee Notes note that "[a]nother central concern will relate to the cost and risk involved in pursuing a litigated outcome." Here, the court may consider "the likely range of possible classwide recoveries and the likelihood of success in obtaining such results. That forecast cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

This factor is likely to be satisfied. The proposed Settlement will eliminate the risk and delay of litigation and make substantial payments available to the Plaintiffs and all other Class Members. There is no guarantee that Plaintiffs will prevail at trial and the litigation could be long, immensely costly, and protracted. The Parties will likely complete numerous depositions

---

[2] *See* https://www.frankraylaw.com/ (last accessed July 17, 2022).

and engage economic and accounting experts in preparation for trial and testimony. In contrast, the Settlement assures that the Plaintiffs and all other Class Members will receive significant compensation with little delay in the face of substantial risk and costs commensurate with further prolonged litigation.

### d. The Relief is Adequate, Taking into Account the Effectiveness of the Proposed Method of Distribution– Rule 23(e)(2)(C)(ii)

Here, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. This factor is likely to be satisfied. First, Class Members are required to do nothing to participate in the settlement – no claim forms or other documents are required to be completed and submitted to participate in the Class recovery – participation is automatic.

Second, the settlement achieves what Named Plaintiffs and Class Counsel believe is an excellent result for Class Members. Based on Class Counsel's calculations, which are grounded in Defendant's data, as to *Rule 23 Subclass 1*, the settlement results in an average payout representing an additional 7.95 minutes of pay per day worked over the class period based on a 5-day workweek (excluding federal holidays during the *Rule 23 Subclass 1* period, and an average constant workforce of 275.5 employees at an average hourly regular rate of $22.82). Based on Class Counsel's calculations, which are based on Defendant's data, *Rule 23 Subclass 1* Members will receive approximately 159% of their alleged but disputed wage damages were they to have worked an additional 5 minutes per day off the clock, 99% of their alleged but disputed wage damages were they to have worked an additional 8 minutes per day off the clock, or 80% of their alleged but disputed wage damages were they to have worked an additional 10 minutes per day off the clock. As to *Rule 23 Subclass 2*, class members will receive

consideration for release of claims notwithstanding the practical and legal reality that these class members have virtually no damages during the release period, resulting in finality for all parties to this action.

The recovery for the covered employees is greater than the payments equating to several minute payouts in other Ohio lawsuits in which other workers sought payment for pre- and/or post-shift activities. For example, in *Kritzer*, Judge Gregory L. Frost **approved a settlement in which employees' payments equated to 4 minutes of unpaid wages per day.** *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *7. Similarly, in *Rotuna*, Judge Sara Lioi **approved an "exceptional" settlement recovery in which class members recovered 25% of the damages they would have recovered by proving 8 minutes of unpaid wages per day, or 75% of their damages by proving 5 minutes of unpaid work each day.** *Rotuna v. W. Customer Mgt. Group, LLC*, N.D.Ohio No. 4:09CV1608, 2010 U.S. Dist. LEXIS 58912, at *21 (June 15, 2010) (noting that "[s]uch an allocation is well above the 7 % to 11 % average result achieved for class members) (citation omitted).

### e. The Relief is Adequate, Taking into Account the Terms of the Proposed Award of Attorney's Fees – Rule 23(e)(2)(C)(iii)

As to this factor, Advisory Committee Notes provide that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* Ex. A at 20 ¶ 8(d), 22 ¶ 9.) After reductions for litigation expenses, the attorneys' fee recovery will equal approximately 32.6% of the Gross Settlement Amount.  (*See* Ex. D, Declaration of Counsel at ¶ 41.)

Moreover, the FLSA provides that the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." O.R.C. § 4111.10.

The FLSA's mandatory fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins,* 19 F.3d 1126, 1134-35 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)). *Accord Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *28 (the fee award must be "adequate to attract competent counsel but … not produce a windfall) (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 2008), quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)).

In the present case, as noted above, the Settlement will provide each worker, based on Class Counsel's calculations, after deduction of attorneys' fees and expenses, with an approximate additional 7.95 minutes of pay per day worked over the class period based on a 5-day workweek (excluding federal holidays during the *Rule 23 Subclass 1* period). Based on Class Counsel's calculations, *Rule 23 Subclass 1* Members will receive approximately 159% of their alleged but disputed wage damages were they to have worked an additional 5 minutes per day off the clock, 99% of their alleged but disputed wage damages were they to have worked an additional 8 minutes per day off the clock, or 80% of their alleged but disputed wage damages were they to have worked an additional 10 minutes per day off the clock. As to *Rule 23 Subclass 2*, each settlement class member will receive an equal share of settlement proceeds in

consideration for their release of claims. *Rule 23 Subclass 2* members will receive consideration for release of claims notwithstanding the practical and legal reality that these class members have virtually no damages during the release period. Such allocations are "well above the 7 % to 11 % average result achieved for class members." *Dillworth v. Case Farms Processing, Inc.,* N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19-20 (Mar. 8, 2010) (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). The attorneys' fees, and the settlement as a whole, are supported by the Declaration of Class Counsel, attached as Exhibit D.

"In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at *14-15 (July 11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008, at *13 (S.D.Ohio Jan.26, 2011)); *Lonardo*, 706 F. Supp. 2d at 790 (percentage-of-fund is "preferred method"). Another court within this district has noted that "[t]he percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel 'as to their expected recovery,' and encourag[es] early settlement before substantial fees and expenses have accumulated." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-21 (citing *Rawlings v. Prudential-Bache Properties*, 9 F.3d 513, 516 (6th Cir.1993); *Jackson v. Papa John's,* Case No. 1:08CV2791, 2008 U.S. Dist. LEXIS 107650 (N.D.Ohio 2008); *Fincham v. Nestle Prepared Foods Co.,* 1:08CV73 (N.D.Ohio 2008); *McGhee v. Allied Waste Indus.,* Case No. 1:07CV1110 (N.D.Ohio 2007)).

Applying *Fegley* and *Rawlings*, courts in the Sixth Circuit commonly approve one-third

fee awards in wage-and-hour actions, including Rule 23 overtime cases. *Wright v. Premier Courier, Inc*., S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (Aug. 17, 2018) (approving one-third attorney fee award and noting "the hours expended and time records submitted by Class Counsel [including Scott & Winters] further underscore their competency and efficient handling of this matter, favoring approval."); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *6-7 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, 2010 WL 2490989, at *7) (approving one-third of the common fund as attorneys' fees) (additional citations omitted)); *Macaluso v. Zirtual Startups, LLC,* S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *18-19 (Aug. 17, 2021) (approving request for attorneys' fees in the amount of one-third of the settlement fund and noting that "Plaintiff's counsel [Scott & Winters] brings substantial collective experience in litigating claims under [the] FLSA. [] Counsel zealously advocated for the Opt-In Plaintiffs' interests throughout the entirety of this litigation."); *Carr v. Bob Evans Farms*, N.D.Ohio No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *2, 9-13 (July 27, 2018) (FLSA collective matter involving 1,869 opt-ins where the court decreased counsel's request of 40% of the fund to one-third); *Hebert v. Chesapeake Operating, Inc*., S.D.Ohio No. 2:17-cv-852, 2019 U.S. Dist. LEXIS 160792, at *21-22 (Sep. 20, 2019) (Morrison, J.) (declining a requested fee award of 40% of the common fund involving not more than 400 class members; subsequently approving 33% of the common fund or $2,821,500); *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *15 (Mar. 26, 2019) (Gaughan, J.) (approving 33 1/3% fee award), *and Brittmon v. Upreach LLC*, S.D.Ohio No. 2:17-cv-219, 2018 U.S. Dist. LEXIS 224730, at *3 (Nov. 8, 2018) (approving 40% of the overall settlement for attorney's fees).

Courts reference the NERA study, cited in 2000 as "[t]he most complete analysis of fee awards in class actions conducted to date." *Shaw v. Toshiba America Information Systems, Inc.*,

91 F. Supp. 2d 942, 988 (E.D. Tex. 2000). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20 (citing study conducted by the National Economic Research Assocs.). The study found that "regardless of size, attorneys' fees average approximately 32% of the [class action] settlement," *Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12), although the average result achieved for class members is generally only 7% to 11% of the claimed damages, *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)).

Measured by the NERA benchmarks, Named Plaintiffs and Class Counsel represent that the proposed Settlement in the present case is exemplary. Class Counsel have actively, aggressively, and efficiently litigated this case against the formidable defense mounted by Defendant. The resulting settlement negotiated by Class Counsel ensures substantial payments to the Plaintiffs and other Class Members. Based on all relevant factors, Named Plaintiffs and Class Counsel represent that the proposed payment of attorneys' fees and cost reimbursements to Class Counsel is proper and reasonable, and fulfills the purpose and intent of the FLSA's fees provisions. Furthermore, as provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel are not to be disbursed until after the final approval order is issued by the Court, contemporaneously along with the settlement payments disbursed to Plaintiffs and other Class Members, and the service awards to Named Plaintiffs. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii).

At the final approval stage, after additional substantial additional work to be completed by Class Counsel, Plaintiffs will fully brief the fairness and reasonableness of the requested attorneys' fees under the Sixth Circuit's "Ramey" factors. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, *8-15 (N.D. Ohio Oct. 17, 2018); *Rudi v. Wexner*,

24

S.D.Ohio No. 2:20-cv-3068, 2022 U.S. Dist. LEXIS 98299, at *11-14 (May 16, 2022).  In the meantime, it is likely that the amount and timing of the proposed attorneys' fees will support final approval because attorney fee recoveries in class and collective actions representing 33% of the common fund generally fall within the acceptable range. *See e.g., Barnes*, 2019 U.S. Dist. LEXIS 65657, at *17 (citing cases).

### f.   The Relief is Adequate, Taking into Account Agreements Required to be Identified under Rule 23(e)(3) – Rule 23(e)(2)(C)(iv)

Rule 23(e)(3) requires the Parties to "file a statement identifying any agreement made in connection with the proposal."  Here, the Settlement Agreement (Ex. A) is the only agreement connected to this class action settlement.  This factor is therefore likely to be satisfied.

### g.   The Settlement Treats Class Members Equitably Relative to Each Other – Rule 23(e)(2)(D)

Advisory Committee Notes comment that the amended Rule prohibits "inequitable treatment of some class members vis-a-vis others." As to *Rule 23 Subclass 1*, inherent in the proposed distribution method in which Class Members are distributed settlement payments based on respective weeks of service to Defendant Erico during the settlement period, the settlement proposal treats Class Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D). This distribution method, based on each *Rule 23 Subclass 1* Member's weeks of service during the applicable time period, is eminently the most equitable proposed method of distributing relief to the class. Similarly, as to *Rule 23 Subclass 2*, each class member will receive the exact same recovery for their release of claims during the applicable time period. This distribution method objectively treats *Rule 23 Subclass 2* Members equitably relative to each other.

## 2. Approval of the Proposal under Civil Rule 23(e)(1)(B)(ii)[3]

Now that the Parties have shown that the Court "will likely be able to . . . approve the proposal under Rule 23(e)(2)," we turn to the second consideration under Rule 23(e)(1)(B): whether the court "will likely be able to . . . (ii) certify the class for purposes of judgment on the proposal." Certification of the proposed Settlement Classes will enable the Parties to resolve the claims of Plaintiffs and all other Class Members. Rule 23 authorizes the Court to certify a class that satisfies the four prerequisites of Rule 23(a) – numerosity, commonality, typicality, and adequate representation – and "meet[s] at least one of the three requirements listed in Rule 23(b)." *Whirlpool Corp,* 678 F.3d at 416. Furthermore, "courts in this Circuit have recognized that ascertainability of class members is an implied prerequisite of Rule 23." *Steigerwald v. BHH, LLC*, 2016 U.S. Dist. LEXIS 21116, *8 (N.D.Ohio Feb. 22, 2016) (citations omitted).

**Numerosity.** The proposed *Rule 23 Subclass 1* consists of approximately 397 employees of Defendant, and the proposed *Rule 23 Subclass 2* consists of a minimum of 404 employees.[4] Numerosity is met as to both subclasses.

**Commonality and typicality.** By definition, *Rule 23 Subclass 1* consists of all former and current Solon, ECN/ESN, non-exempt production employees of Defendant at any time between February 5, 2018 to April 18, 2020, excluding employees who participated in the

---

[3] Erico contends that this action is not suitable for class certification, except for settlement purposes. For settlement purposes *only*, Erico stipulates that the *Rule 23 Subclass 1* members *and Rule 23 Subclass 2* members who do not timely and validly request exclusion from the settlement may be certified as settlement subclasses pursuant to Fed. R. Civ. P. 23. This stipulation to certification is in no way an admission that class action certification is proper and shall not be admissible in this or in any other action except for the sole purposes of enforcing the Parties' Settlement Agreement. Erico expressly reserves its right and declares that it would continue to oppose class certification and the substantive merits of the case if the Court does not grant final approval of this proposed settlement. Ex. at ¶ 20.

[4] The proposed *Rule 23 Subclass 2* includes many of the same employees in the proposed *Rule 23 Subclass 1*. Based on information currently available, the Parties believe that both subclasses include less than 600 total employees.

26

*Hardimon* settlement. (Ex. A at 8-9.) *Rule 23 Subclass 2* consists of all former and current Solon, ECN/ESN, non-exempt production employees of Defendant at any time between April 19, 2020 to April 1, 2022, excluding named or opt-in plaintiffs in the *Hardimon* action. (*See id.*) Plaintiffs allege that Defendant owes additional compensation to these persons pursuant to the FLSA and Ohio wage-and-hour statutes, O.R.C. §§ 4111.01, *et seq.* (*See generally* ECF #1, Compl.) Based on their time periods of employment, all members of each of the respective settlement classes, including Named Plaintiffs, have these claims, and, for settlement purposes only, adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit..." *Arlington Video Prods. v. Fifth Third Bancorp,* 515 F.App'x 426, 441 (6th Cir.2013).

**Adequacy of Representation.** As above, Plaintiffs have aggressively pursued the interests of Class Members in this case, and Class Counsel have extensive experience in class action litigation including wage-and-hour cases. *Young*, 693 F.3d at 543 (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc*., 75 F.3d at 1083 (citation omitted)). As explained above, the class representatives and Class Counsel have adequately represented the class, achieving what they believe is an exceptional result for Class Members. Fed. R. Civ. P. 23(e)(2)(A). *See Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *19-20.

**Predominance.** Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Whether Plaintiffs and other Class Members should have been paid additional overtime compensation was the common issue in this litigation, and this issue is the primary issue driving

the proposed Settlement. For purposes of settlement, common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** Rule 23(b)(3) requires class litigation to be "superior to other available methods for fairly and efficiently adjudicating the controversy," and describes four factors that are "pertinent" to this superiority requirement.

Rule 23(b)(3)(A) requires courts to consider class members' "interests in individually controlling the prosecution or defense of separate actions."  This factor requires the Court to consider whether "Settlement Class Members have any interest in maintaining this litigation as separate actions." *Blasi v. United Debt Servs., LLC*, S.D.Ohio No. 2:14-cv-83, 2019 U.S. Dist. LEXIS 198201, at *15 (Nov. 15, 2019). Here, there is no evidence that this is the case. As here, "the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers." *Id.* (citing *Tedrow v. Cowles,* S.D.Ohio No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *26 (Sep. 12, 2007).

Rule 23(b)(3)(B) also requires courts to consider "the extent and nature of any litigation concerning the controversy already begun by" class members. No related, pending litigation exists here. In fact, the settlement specifically excludes such employees who released wage and hour law claims as named or opt-in plaintiffs in settlement of the action *Hardimon v. Erico International,* No. 1:20-cv000246. The individuals included in that case, who previously released their wage and hour claims in exchange for monetary consideration, are not members of either of the settlement classes in this case by class definition, foreclosing any double recovery.

Rule 23(b)(3)(C) further requires courts to consider the desirability of "concentrating the litigation of the claims in the particular forum."  Here, concentration of claims is in fact desirable

because the Defendant's Solon facilities – where all class members worked – is located in this district and division.

Finally, Rule 23(b)(3)(D) asks the Court to consider any "likely difficulties in managing the class action." Fed. R. Civ. P. 23(b)(3)(D).  As noted in *Amchem Prods. v. Windsor*, 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), this requirement is satisfied automatically when a case is certified for settlement purposes.

**Ascertainability: "**Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537-38 (internal citations omitted). Here, the ascertainability requirement is satisfied because Class Members are objectively identified through Defendant's payroll and management software and systems.

### C.  The Service Awards are Proper and Reasonable

A reasonable service award is "common in class action settlement and routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna*, 2010 U.S. Dist. LEXIS 58912, at *18). *Accord Osman*, 2018 U.S. Dist. LEXIS 78222, at *5-6 (approving $7,500 service award to named plaintiff); *Alward v. Marriott Internatl., Inc.*, N.D.Ohio No. 1:18-cv-02337-PAG, 2019 U.S. Dist. LEXIS 199053, at *4 (Nov. 18, 2019) (approving $7,500 service award); *Salinas v. United States Xpress Ents., Inc.*, E.D.Tenn. No. 1:13-cv-00245-TRM-SKL, 2018 U.S. Dist. LEXIS 50800, at *26 (Mar. 8, 2018) (approving $10,000 service award to named plaintiff, along with $500 service awards for ten opt-in plaintiffs) (citing *Whittington v. Taco Bell of Am., Inc.*, D.Colo. Civil Action No. 10-cv-

01884-KMT-MEH, 2013 U.S. Dist. LEXIS 161665, at *24 (Nov. 13, 2013) (approving service payment for the named plaintiff of $7,500); *Bredbenner v. Liberty Travel, Inc.,* D.N.J. Civil Action No. 09-905 (MF), 2011 U.S. Dist. LEXIS 38663, at *68 (Apr. 8, 2011) ($10,000 each for the 8 named plaintiffs); *Dewey v. Volkswagen of Am.*, 728 F.Supp.2d 546, 610 (D.N.J.2010) ($10,000); *see also* Newberg on Class Actions § 11:38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000)).

In the present case, Named Plaintiffs and Class Counsel represent that the proposed service awards to Named Plaintiffs are amply justified by their assistance to Class Counsel and their contributions to achieving the Settlement on behalf of all Class Members. Indeed, Named Plaintiffs and Class Counsel represent that each of the Named Plaintiffs incurred "substantial direct and indirect financial risks in attempting to vindicate the rights of others," *In re Dun & Bradstreet Credit Servs. Customer Litigation,* 130 F.R.D. 366, 374 (S.D.Ohio 1990), by, among other things, providing analysis to Counsel and advising Counsel as to prosecution of the action prior to and during the pendency of this matter, as well as consulted with Class Counsel at critical stages. Named Plaintiffs and Class Counsel represent that Plaintiff Parris McKnight, the leading Named Plaintiff who instituted this litigation, "spent a good deal of time and effort in this case," *see id.*, by responding to dozens of phone calls and inquiries from other potential opt-ins and other employees to this litigation, attended the April 1, 2022 Zoom Mediation at Class Counsel's office; helped counsel prepare Plaintiffs' comprehensive mediation statement and settlement demand; and provided necessary and important information throughout the course of the litigation. Furthermore, Named Plaintiffs and Class Counsel represent that all Named Plaintiffs faithfully represented the interests of all Class Members and ably assisted Class

Counsel, their contributions were instrumental in achieving this Settlement on behalf of all concerned, and the proposed service awards are reasonable and well-earned.

### D. The Proposed Notice Should Be Approved – Rule 23(c)(2)(B)

In order to protect the rights of absent members of a Settlement Class, the Court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-175, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Amended Fed. R. Civ. P. 23(c)(2)(B) specifically provides that "[f]or any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances…" Such a notice should define the class, describe clearly the options open to the Class Members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorney's fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the Class Members to calculate individual recoveries, and prominently display the address and telephone number of Class Counsel and the procedure for making inquiries. Manual for Complex Litigation at § 21.312. *See* Fed. R. Civ. P. 23(c)(2)(B)(i-vii).

Here, each Class Member will receive notice so that all putative Class Members will be given the choice to participate or not to participate, including the right to preserve any individual claims or rights they may have against the Defendant in this action.

The Proposed Notice of Class Action Settlement and Fairness Hearing (the "Notice"), attached as Exhibit B, should be approved. The proposed Notice gives Class Members a reasonable period of 60 calendar days after the mailing date to opt out of the Settlement Class or

object to the Settlement. The Notice defines each of the subclasses, describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments, clearly describes the options open to the Class Members and deadlines for taking action, describes the terms of the proposed settlement, discloses benefits provided to the class representatives, provides information regarding attorney's fees, indicates the time and place of the fairness hearing, explains the procedure for distributing settlement funds, informs Class Members how to object to the Settlement or request exclusion from the Class if they so choose, provides each Class Member's individual recoveries, and prominently displays the address and telephone number of Class Counsel and the procedure for making inquiries. The Notice is written in plain and understandable language. The Parties request approval of the Notice as drafted. If approved, the Notice will be sent to potential Class Members by "United States mail." Rule 23(c)(2)(B). In sum, the Notice constitutes the "best notice that is practicable under the circumstances," and, therefore, should be approved.

### E. The Court Should Appoint SCOTT & WINTERS LAW FIRM as Interim Class Counsel.

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of the putative class before determining whether to certify the action as a class action." Following notice, at the final approval stage, interim Class Counsel may seek to be appointed class counsel. Rule 23(g)(1). Here, SCOTT & WINTERS respectfully requests the Court to appoint them as interim Class Counsel. As outlined in Counsel's Declaration, proposed Class Counsel are highly experienced lawyers handling class actions, other complex litigation, and the types of wage and hour claims asserted in the action. Class Counsel have completed substantial amounts of work in identifying and investigating the claims in this case, have extensive experience litigating hybrid class/collective wage-and-hour cases and substantial knowledge of the applicable law, and have

demonstrated a willingness to commit the necessary resources to prosecute the claims of the Rule 23 Class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). SCOTT & WINTERS LAW FIRM is competent and experienced in class and collective wage-and-hour litigation. This experience includes prosecuting claims under the FLSA and state law, being appointed as class counsel to represent classes of employees, and successfully resolving the claims of thousands of workers. (*See generally* Ex. D, Declaration of Counsel.)

## V.     CONCLUSION

For the reasons addressed above, the Parties respectfully request that the Court enter the proposed Preliminary Approval Order, attached as Exhibit C.

Respectfully submitted,

<div style="display: flex; justify-content: space-between;">

<div>

*/s Ryan A. Winters*
_____
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
Kevin M. McDermott II (0090455)
SCOTT & WINTERS LAW FIRM, LLC
The Caxton Building
812 Huron Rd. E., Suite 490
Cleveland, OH 44115
P: (216) 912-2221    F: (216) 350-6313
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs and*
*Proposed Interim Class Counsel*

</div>

<div>

*/s      Carrie A. McAtee      (via email*
*consent)*
Carrie A. McAtee (MO 54949)
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108
Ph: (816) 559-2512
Email: cmcatee@shb.com

Gust Callas (0015815)
BLACK, MCCUSKEY, SOUERS & ARBAUGH
220 Market Avenue South, Suite 1000
Canton, Ohio 44702
Ph: (330) 456-8341
Fax: (330) 456-5756
Email: gcallas@bmsa.com

*Counsel for Defendant*

</div>

</div>

**CERTIFICATION OF COMPLIANCE**

The undersigned hereby certifies that the above Memorandum in Support complies with the Court's June 13, 2022 Order allowing this document to exceed the page limitations set forth in Local Rule 7.1(f). (*See also* ECF #33 (requesting not to exceed page limitation extension of 32 total pages).)

/s Ryan A. Winters
Ryan A. Winters (0086917)

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s Ryan A. Winters
Ryan A. Winters (0086917)