UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PARRIS MCKNIGHT, *et al.,* | ) | Case No. 1:21-cv-01826 |
| | ) | |
| *On behalf of themselves and all others* | ) | JUDGE J. PHILIP CALABRESE |
| *similarly situated,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| *v.* | ) | |
| | ) | |
| ERICO INTERNATIONAL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## JOINT MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT, AND OTHER ASSOCIATED RELIEF

The parties – Plaintiffs Parris McKnight, Dawn Adams, Matthew Bailey, Ryan Evans, Corey Green, Deresse Jackson, Latonya Jordan, Joshua Livingston, Michael Metz, Robert Metz, Frederick Midgley, Randi Robinson, Tia Robinson, and Tyronn Taylor (hereinafter also collectively referred to as "Plaintiffs") and Defendant Erico International Corporation (hereinafter also referred to as "Defendant" or "Erico") – respectfully and jointly move the Court to enter a final order approving, as fair, reasonable, and adequate, the settlement of this collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and the settlement of *Rule 23 Subclass 1* and *Rule 23 Subclass 2* Settlement Class Members' state-law claims pursuant to Fed. R. Civ. P. 23(e). In addition to the below Memorandum in Support, the parties attach the following in support of this joint motion:

Exhibit 1:    Proposed *Order Granting Joint Motion for Certification of the Settlement Class, Final Approval of the Class Action Settlement, and Other Associated Relief* ("Proposed Final Order and Judgment");

Exhibit 2:    Declaration of Settlement Class Administrator Rust Consulting, Inc. (including Exhibit A to Declaration – Final Class Notice as sent to Class/Collective Members);

Exhibit 3:    Final Class Member List; and

Exhibit 4:    Declaration of Interim Class Counsel Ryan A. Winters of Scott & Winters Law Firm, LLC ("Declaration of Class Counsel").

The settlement requires Defendant Erico to make a total settlement payment of $███████, plus its share of any payroll taxes (such as, for example, the employer's share of federal, state and local taxes, worker's compensation insurance, unemployment insurance, or the employer's social security contributions) ordinarily borne by Defendant as an employer pursuant to normal payroll practices. (*See* Confidential Class/Collective Action Settlement Agreement and Release ("Settlement Agreement"), ECF #38-1 at PageID ## 287, 295.) If approved, the settlement will be distributed as follows: (i) $██████ will be paid to the 397 members of the *Rule 23 Subclass 1*, and $██████ will be paid to the 439 members of the *Rule 23 Subclass 2*; (ii) a $██████ service award will be paid to Leading Named and Representative Plaintiff Parris McKnight, and a service award of $██████ will be paid to each of the remaining Named Plaintiffs (for a total of $██████); (iii) a total of $██████ (representing $██████ in attorneys' fees (32.6% of the total settlement fund) and $██████ in costs) will be paid to Interim Class Counsel (hereinafter "Class Counsel"); and (iv) $██████ will be paid to Settlement Class Administrator Rust Consulting, Inc. (hereinafter "Rust Consulting") as necessary costs of settlement administration.

Points and authorities supporting approval of the settlement were submitted in the parties' Joint Motion for Preliminary Approval of Class Action Settlement (ECF #38) ("Preliminary Approval Motion"), which was adopted by the Court in its Order Granting Preliminary Approval of Settlement (ECF #41) ("Preliminary Approval Order"). Today's motion incorporates the

earlier submissions and supplements their content. At the time of this filing, no Settlement Class

Members have asserted an objection to the settlement, and no Settlement Class Members have

requested exclusion from the settlement.


Respectfully submitted,

*/s Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com


Kevin M. McDermott II (0090455)
**SCOTT & WINTERS LAW FIRM, LLC**
P: (216) 912-2221    F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com


*Attorneys for Plaintiffs and*
*Interim Class Counsel*

*/s Carrie A. McAtee (via email consent)*
Carrie A. McAtee (MO 54949)
**SHOOK, HARDY & BACON LLP**
2555 Grand Blvd.
Kansas City, Missouri 64108
Ph: (816) 559-2512
Email: cmcatee@shb.com


Gust Callas (0015815)
**BLACK, MCCUSKEY, SOUERS & ARBAUGH**
220 Market Avenue South, Suite 1000
Canton, Ohio 44702
Ph: (330) 456-8341
Fax: (330) 456-5756
Email: gcallas@bmsa.com


*Counsel for Defendant*

## TABLE OF CONTENTS

Table of Authorities ...........................................................................................................v

Memorandum in Support .................................................................................................1

I.      Introduction ...........................................................................................................1

II.     Background and Summary of the Claims and the Terms of Settlement............................2

III.    Preliminary Approval of the Class/Collective Settlement ...................................6

IV.    The Court-Approved Notice Process .................................................................6

V.     Argument ...............................................................................................................7

     A.     Settlement of the FLSA Claims .........................................................7

     B.     Settlement of the State Law Claims ...................................................8

     C.     The Results of the Notice Process Favor Approval ...........................9

     D.     The Requested Attorney Fee and Litigation Costs Reimbursement
             Should be Approved ...........................................................................10

            1.     The *Ramey* Six-Factor Test Supports the
                   Reasonableness of a Fee Award. .................................................11

            2.     A Lodestar Cross-Check Supports the
                   Reasonableness of the Requested Fee............................................16

                 a.     Class Counsel's Hourly Rates are
                         Reasonable .........................................................................17

                 b.     Class Counsel's Hours Expended are
                           Reasonable .........................................................................20

                 c.     The Costs Expended by Class Counsel were
                           Both Reasonable and Necessary .......................................24

VI.    Conclusion ...........................................................................................................24

Certificate of Service ......................................................................................................26

Certificate of Compliance with Page Limitation Requirements.......................................26

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343 (6th Cir.2000)......................................... 18

*Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512
    (S.D. Ohio Nov. 5, 2020)................................................................................................... 24

*Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657
    (Mar. 26, 2019) ............................................................................................... 11, 13, 15

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y.2013) ...................................................... 15

*Berry v. Fun Time Pool & Spa, Inc.*, No. 2:20-cv-1610, 2020 U.S. Dist. LEXIS 148836
    (S.D. Ohio Aug. 18, 2020)................................................................................................. 19

*Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) .................................... 17

*Bowling v. Pfizer, Inc.,* 102 F.3d 777 (6th Cir.1996)................................................................. 16

*Castillo v. Morales, Inc.,* S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936
    (Dec. 22, 2015) ............................................................................................................... 17

*Clark v. Pizza Baker, Inc.,* No. 2:18-cv-157, 2022 U.S. Dist. LEXIS 198354 (S.D. Ohio
    Oct. 31, 2022) ................................................................................................................. 19

*Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008
    (S.D.Ohio Jan.26, 2011) .................................................................................................. 11

*Dillow v. Home Care Network, Inc.*, No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579,
    2018 WL 4776977 (S.D. Ohio Oct. 3, 2018)................................................................ 17, 24

*Dillworth v. Case Farms Processing, Inc.*, N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist.
    LEXIS 20446 (Mar. 8, 2010)........................................................................................ 11, 13

*Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836
    (S.D. Ohio May 17, 2021) ................................................................................................ 19

*Feiertag v. DDP Holdings, LLC,* S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS
    122297 (Sep. 9, 2016)................................................................................................ 16, 17

*Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS
    30963 (Feb. 18, 2021)...................................................................................................... 18

*Ganci v. MBF Insp. Servs.*, S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645
    (Dec. 3, 2019) ............................................................................................................. 17, 24

*Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir.2016)...................................... 16

*Geier v. Sundquist,* 372 F.3d 784 (6th Cir.2004) ......................................................... 18

*Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887 (S.D. Ohio, June 24, 2011) ................................................................................................................... 13

*Gresky v. Checker Notions Co*., No. 3:21-cv-01203, 2022 U.S. Dist. LEXIS 154506 (N.D. Ohio Aug. 26, 2022) ................................................................................. 19

*Gunter v. Diamond Technical Services, Inc*., No. 2:20-cv-01428 (W.D. Penn. May 6, 2022) ................................................................................................................... 18

*Hurt v. Commerce Energy, Inc*., N.D.Ohio No. 1:12-cv-758, 2018 U.S. Dist. LEXIS 168134 (Sep. 28, 2018) ...................................................................................... 19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation,* N.D.Ohio No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467 (Sep. 23, 2016) ...................... 9

*Jackson v. Trubridge, Inc*., N.D.Ohio No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782 (N.D. Ohio Jan. 26, 2017) ................................................................................... 8

*Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994 (S.D. Ohio May 30, 2012) ................................................................................................................... 8

*Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766 (N.D. Ohio 2010) ............................ 11

*Lowther v. AK Steel Corp., S.D.Ohio No. 1:11-cv-877,* 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131 (Dec. 21, 2012) .................................................................. 15, 17, 24

*Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243 (Aug. 17, 2021) ........................................................................... 16

*Osman v. Grube, Inc*., N.D.Ohio No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222 (N.D. Ohio May 4, 2018) ................................................................................. 8, 18

*Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717 (Jan. 23, 2021) ....... 18

*Pineda v. Pit Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288 (S.D. Ohio Nov. 28, 2017) ....................................................................................... 19

*Ramey v. Cincinnati Enquirer, Inc*., 508 F.2d 1188 (6th Cir. 1974) ........................................ 12

*Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S. Dist. LEXIS 39157 (S.D. Ohio Mar. 6, 2020) ......................................................... 19

*Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513 (6th Cir. 1993) ................................ 11, 16

*Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09–CV–1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) ....................................................................................... 11

*Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450
(July 11, 2014) ............................................................................... 11, 14, 17, 24

*Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207,
2016 WL 814044 (S.D. Ohio Feb. 26, 2016) ...................................................... 16

*Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084 (Aug. 1,
2022) ............................................................................................................ 18, 23

*Wright v. Premier Courier, Inc*., S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS
140019 (Aug. 17, 2018) .................................................................................... 16

## Rules

Fed. R. Civ. P. 23 ....................................................................................... passim

Fed. R. Civ. P. 26 ............................................................................................ 20

## Statutes

29 U.S.C. § 207 ............................................................................................. 3, 7

29 U.S.C. § 216 ............................................................................................. i, 4, 8

O.R.C. § 4111.03 ........................................................................................... 3, 7

O.R.C. § 4111.10 ........................................................................................... 3, 7

## Other Authorities

Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends
III: What Explains Settlements in Shareholder Class Actions? (National Economic
Research Assocs. (NERA) June 1995) ............................................................... 13

*The Economics of Law Practice in Ohio in 2013* ............................................. 19, 20

## <u>MEMORANDUM IN SUPPORT</u>

## I.    INTRODUCTION

Plaintiffs and Defendant submit this memorandum in support of their joint motion for final approval of the settlement of this class/collective action lawsuit. The settlement requires Erico to make a total settlement payment of $ ███████ . If approved, the settlement will be distributed as follows: (i) $ ███████ will be paid to the 397 members of the *Rule 23 Subclass 1*, and $ ███████ will be paid to the 439 members of the *Rule 23 Subclass 2* (ECF #38-1, Settlement Agreement at PageID ##282-83, 286, 293-94); (ii) a $ ███████ service award will be paid to Representative Plaintiff Parris McKnight, and a service award of $ ███████ will be paid to each of the remaining Named Plaintiffs (for a total of $ ███████ ) (*id.* at PageID ##300-01, ¶ 10); (iii) a total of $ ███████ ($ ███████ in attorneys' fees (representing 32.6% of the total settlement fund) and $ ███████ in costs) will be paid to Class Counsel (*see id.* at PageID #298, ¶ 9); and (iv) $ ███████ will be paid to Settlement Class Administrator Rust Consulting as necessary costs of settlement administration (*id.* at PageID #304, ¶ 11).

On August 25, 2022, the Court entered an order preliminarily approving the settlement, authorizing the issuance of notice to the Class Members, and appointing Scott & Winters Law Firm to serve as Interim Class Counsel. (*See* ECF #41.) The notice process is now complete. No Class Members object to the settlement, and no Class Members have requested to be excluded from the settlement.

This settlement is ripe for final approval. In anticipation of the December 21, 2022, 2:00 p.m. fairness hearing, the parties file the above motion and this memorandum in support and ask the Court to enter an order:

- Certifying, pursuant to Fed. Rs. Civ. P. 23(a) and 23(b)(3), a settlement class consisting of all former and current non-exempt production employees of Defendant Erico International Corporation who worked at Defendant's ECN and/or ESN

manufacturing facilities in Solon, Ohio at any time between February 5, 2018 to April 18, 2020, excluding such employees who released Ohio wage and hour law claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon v. Erico International Corp.*, Case No. 1:20-cv000246-PAB (the "*Rule 23 Subclass 1*");

- Certifying, pursuant to Fed. Rs. Civ. P. 23(a) and 23(b)(3), a settlement class consisting of all former and current non-exempt production employees of Defendant Erico International Corporation who worked at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between April 19, 2020 to April 1, 2022, excluding such employees who released Ohio wage and hour law claims as named or opt-in plaintiffs in settlement of the action Patricia Hardimon v. Erico International Corp., Case No. 1:20-cv000246-PAB (the "*Rule 23 Subclass 2*");

- Approving, pursuant to Fed. R. Civ. P. 23(e)(2), the settlement of this action as "fair, reasonable, and adequate;"

- Approving Class Members' waiver of their wage and hour claims as provided in the Settlement Agreement;

- Approving payments of a $██████ service award to Leading Named Plaintiff Parris McKnight, and a $██████ payment to each of the remaining Named Plaintiffs Dawn Adams, Matthew Bailey, Ryan Evans, Corey Green, Deresse Jackson, Latonya Jordan, Joshua Livingston, Michael Metz, Robert Metz, Frederick Midgley, Randi Robinson, Tia Robinson, and Tyronn Taylor (for a total of $██████);

- Appointing, pursuant to Fed. R. Civ. P. 23(g)(1), the law firm of Scott & Winters Law Firm, LLC to serve as permanent Class Counsel; and

- Approving, pursuant to Fed. R. Civ. P. 23(h), a payment to Class Counsel of $██████ (representing $██████ in attorneys' fees and $██████ in costs).

A proposed Final Order and Judgment is attached as Exhibit 1 for the Court's consideration.

## II.   BACKGROUND AND SUMMARY OF THE CLAIMS AND THE TERMS OF SETTLEMENT

Named Plaintiffs filed their Class and Collective Action Complaint on September 27, 2021. (Compl., ECF #1.) Plaintiffs' Complaint alleged that they and other similarly situated employees were willfully not paid for all time worked, including compensable time at the beginning and end of their shifts, as a result of Defendant's alleged unlawful time editing and rounding policies, and are owed overtime compensation, liquidated damages, attorneys' fees, and

costs pursuant to the FLSA, 29 U.S.C. § 207, and Ohio Revised Code §§ 4111.03, 4111.10. (*Id.*
at ¶¶ 47-62.) Defendant denied Plaintiffs' claims and asserted affirmative defenses. (*See* ECF
#15, Answer to Compl.) After comprehensive and extensive investigations, discovery including
analysis of wage-and-hour information and other data and documents comprising of over
10,168,000 data points from the records produced by Defendant, and contentious negotiations,
the parties were able to reach a final resolution on April 4, 2022, following the April 1, 2022
mediation before mediator Frank A. Ray, *Esq.* and each parties' consideration and acceptance of
the mediator's proposal and recommendation.

As a result of these negotiations, Defendant has agreed to pay the total settlement amount
of $⬛⬛⬛ which will be made in full and final settlement of: (1) the claims released by
Plaintiffs, FLSA Collective Action Members and other Rule 23 Class Members of each of the
*Rule 23 Subclasses I* and *II*; (2) attorneys' fees and reimbursed litigation expenses; (3) costs of
administration; (4) service awards; and (5) any other obligations of Defendant under the
Settlement Agreement.

The *Rule 23 Subclass 1* consists of:

> [A]ll former and current non-exempt production employees of Defendant Erico
> International Corporation who worked at Defendant's ECN and/or ESN
> manufacturing facilities in Solon, Ohio at any time between February 5, 2018 to
> April 18, 2020, excluding such employees who released Ohio wage and hour law
> claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon
> v. Erico International Corp*., Case No. 1:20-cv000246-PAB.

(ECF #38-1, Settlement Agreement at PageID ##284-85.) From the Gross Settlement Amount,
the total sum of $⬛⬛⬛ shall be allocated to the 397 *Rule 23 Subclass 1* Members whose
names are listed in the Final Class Member List attached as Exhibit 3, resulting in an
approximate average gross recovery of $⬛⬛⬛ per *Rule 23 Subclass 1* Member. Payments to
*Rule 23 Subclass 1* Members are based proportionally on each *Rule 23 Subclass 1* Member's

respective weeks of service to Defendant Erico from February 5, 2018 to April 18, 2020, subject to a $▆ minimum payment. (*See* ECF #38-1 at PageID #286.) In addition, *FLSA Collective Action Subclass 1* Members – who are also *Rule 23 Subclass 1* Members – who previously submitted consent forms to join this action pursuant to the FLSA, 29 U.S.C. § 216(b), will receive additional compensation for the approximate claimed but disputed third year of recovery under the FLSA (including claimed but disputed liquidated damages). (*Id.*)

As to the *Rule 23 Subclass 1*, according to Class Counsel's calculations, based on Defendant's data, the Settlement amount for the Class, and at an average hourly rate of $22.82, *Rule 23 Subclass 1* Members will receive approximately 159% of their alleged but disputed wage damages were they to have worked an additional 5 minutes per day off the clock, 99% of their alleged but disputed wage damages were they to have worked an additional 8 minutes per day off the clock, or 80% of their alleged but disputed wage damages were they to have worked an additional 10 minutes per day off the clock, an average gross recovery of $▆▆▆ per *Rule 23 Subclass 1* Member. Moreover, and as to *Rule 23 Subclass 1*, inherent in the proposed distribution method in which Class Members are distributed settlement payments based proportionally on each Class Member's respective weeks of service to Defendant Erico during the relevant period, the settlement proposal treats *Rule 23 Subclass 1* Members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(D).

In addition, the *Rule 23 Subclass 2* consists of:

[A]ll former and current non-exempt production employees of Defendant Erico International Corporation who worked at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between April 19, 2020 to April 1, 2022, excluding such employees who released Ohio wage and hour law claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon v. Erico International Corp.*, Case No. 1:20-cv000246-PAB.

4

(ECF #38-1, Settlement Agreement at PageID #285.) *Rule 23 Subclass 2* Members will be paid as set forth in the Settlement Agreement resulting in an actual and average gross recovery of $██████ per *Rule 23 Subclass 2* Member. *Rule 23 Subclass 2* members will receive consideration for release of claims notwithstanding the practical and legal reality that these class members have virtually no damages during the release period – as of March 13, 2020, Defendant implemented COVID-19 safety protocols that included shift staggering. Pursuant to this protocol, employees were required to clock out and leave Defendant's facility 15 minutes prior to the end of their scheduled shift time so that they would not have contact with employees arriving to work for the next shift. This shift staggering protocol made it impossible, from Defendant's perspective, for any non-exempt hourly employee to have worked any unpaid pre-shift or post-shift time as of March 13, 2020. Nevertheless, in an effort to provide consideration for a release of claims from March 13, 2020 (after which Defendant's timekeeping and payroll system made it virtually impossible for employees to work off the clock), Defendant has agreed to a compromise resolution of any potential wage and hour claims during this time period. As to *Rule 23 Subclass 2*, each settlement class member will receive an equal share of settlement proceeds – $██████ – in consideration for their release of claims. Plaintiffs and FLSA Collective Action Members, as also each members of the *Rule 23 Subclass 2* settlement class to the extent they were employed during the applicable time period with Defendant (April 19, 2020 to April 1, 2022), will participate in the same recovery as applied to all other *Rule 23 Subclass 2* members.

As to both Rule 23 settlement subclasses and the FLSA Collective, this is not a "claims-made" settlement. All Class Members will receive a settlement check. *See* Fed. R. Civ. P. 23(e)(2)(D). **No class member has requested exclusion. No class member has objected to the settlement.**

5

The proposed Settlement also provides for service awards to Representative Plaintiffs in recognition of their assistance to Class Counsel and their contribution to achieving the Settlement on behalf of all Class Members. In addition, Class Counsel will receive attorneys' fees and reimbursed litigation costs; after reductions for litigation expenses, the attorney fee recovery will equal approximately 32.6% of the settlement fund. As provided in the Settlement Agreement, attorneys' fees and costs to Class Counsel will not be paid by Defendant until after the final approval order is issued by the Court, contemporaneously along with the settlement payments to Plaintiffs and other Class Members. (*See* ECF #38-1 at 293-304, ¶¶ 8-10.)

## III.    PRELIMINARY APPROVAL OF THE CLASS/COLLECTIVE SETTLEMENT

On July 29, 2022, the parties filed their Joint Motion for Preliminary Approval of Class Action Settlement and supporting exhibits. (ECF ##38, 38-1, 38-2, 38-3, 38-4.) On August 25, 2022, the Court entered the Preliminary Approval Order, (i) preliminarily approving the settlement; (ii) approving the class Notice form and protocols; (iii) appointing Scott & Winters Law Firm, LLC to serve as Interim Class Counsel; and (iv) scheduling a fairness hearing for December 21, 2022. (*See* ECF #41.)

## IV.    THE COURT-APPROVED NOTICE PROCESS

Per the Settlement Agreement and Preliminary Approval Order, Settlement Administrator Rust Consulting performed address updates and mailed the Notice forms to 553[1] putative

---

[1] As provided in Exhibit 2, Rust Consulting Decl. at ¶ 15, "[o]n or about October 10, 2022, Counsel informed Rust that one (1) Individual that was included in the Class List and should not have been. Rust has since removed that individual from the Class List. The revised Class size after removing this individual is 566 Class Members." This individual was inadvertently included in the class list provided by Defendant to the Settlement Administrator, but did not qualify for participation due to the individual's participation in the *Patricia Hardimon v. Erico International Corp.,* Case No. 1:20-cv000246-PAB matter. Plaintiffs' counsel in the *Hardimon* matter has been informed of this oversight for communication with this individual, and Rust

class/collective members who were not Named Plaintiffs. (*See* Ex. 2, Declaration of Settlement Administrator Rust Consulting – Senior Project Manager Chris Pikus ("Rust Consulting Decl.") at ¶¶ 9-10.) Various Notice forms were re-mailed pursuant to the Court-approved protocols. (*See id.* at ¶¶ 10-11.)

Class Members had until November 25, 2022 to object to or seek exclusion from the settlement. (*See* Rust Consulting Decl. at ¶ 9; *see also* ECF #38-1, Settlement Agreement at PageID #283 (defining the "Notice Response Deadline"); PageID ##290-93, ¶¶ 6-7.) **No class member has objected to the settlement, and no class member has sought to be excluded from the settlement.** (Ex. 2, Rust Consulting Decl. at ¶¶ 13-14.)

## V.     ARGUMENT

This settlement covers the 14 Named Plaintiffs and 552 other (566 total) current and former hourly employees of Defendant Erico who alleged that they were not paid for all time worked, including compensable time at the beginning and end of their shifts, as a result of Defendant's alleged unlawful time editing and rounding policies, and claim they are owed overtime compensation, liquidated damages, attorneys' fees, and costs pursuant to the FLSA, 29 U.S.C. § 207, and O.R.C. §§ 4111.03, 4111.10. (*See* ECF #1, Compl. ¶¶ 47-76; *see also* ECF #38-1, Settlement Agreement at PageID ##277-78.) The settlement resolves wage-and-hour claims of Named Plaintiffs, FLSA Collective Action (including *FLSA Collective Action Subclass 1* and *Subclass 2*), *Rule 23 Subclass 1*, and *Rule 23 Subclass 2* Members as provided in the Settlement Agreement. (*See* ECF #38-1 at PageID #279 (defining "Class/Collective Members").)

### A.     Settlement of the FLSA Claims

---

Consulting has recalculated the final allocations after removal of this individual, which has resulted in a slightly higher payout to each of the *Rule 23 Subclass 1* members.

As to the FLSA claims governed by 29 U.S.C. § 216(b), the Court previously found that "[t]here is a 'bona fide dispute between the parties as to the employer's liability under the FLSA' and the Settlement 'is fair, reasonable, and adequate.'" (ECF #41 at ¶ 7 (citing *Jackson v. Trubridge, Inc*., No. 5:16-cv-00223, 2017 U.S. Dist. LEXIS 193782, at *4 (N.D. Ohio Jan. 26, 2017) (quoting *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012)); *Osman v. Grube, Inc*., No. 3:16-cv-00802-JJH, 2018 U.S. Dist. LEXIS 78222, at *2 (N.D. Ohio May 4, 2018) (additional citations omitted).) The Court accordingly found in its Preliminary Approval Order that "the proposed Settlement satisfies the standard for approval of a class/collective action settlement under 29 U.S.C. § 216(b) and Section 4111.01 *et seq*." (ECF #41 at ¶ 7.)

### B.    Settlement of the State Law Claims

As to the state law Rule 23 claims, the parties' Preliminary Approval Motion made the required showing under Fed. R. Civ. P. 23. Based on that showing, the Court ruled that it "**PRELIMINARILY APPROVE[D]** the settlement of this action under Rule 23 because it appears that, at the final approval stage, the Court 'will likely be able to' approve the settlement under the criteria described in Rule 23(e)(2) and, for settlement purposes only, certify the settlement classes under the criteria described in Rules 23(a) and 23(b)(3)." (ECF #41 at ¶ 11 (emphasis original) (citing *see* Fed. R. Civ. P. 23(e)(1)(B)(i)-(ii)).) The Court appointed Plaintiffs' counsel as Interim Class Counsel pursuant to Rule 23(g)(3) (*id.* at ¶ 15), and approved the proposed "Notice of Class Action Settlement" and ordered that it "shall be sent to the '*Rule 23 Subclass 1* Members' and the '*Rule 23 Subclass 2* Members' as defined in the Settlement Agreement, pursuant to those protocols[,]" (*id.* at ¶ 12; *see id.* at ¶ 14).

Thus, the Court's convening of the Fairness Hearing on December 21, 2022 will complete the notice-and-hearing process prescribed by Rule 23(e). *See* Fed. R. Civ. P. 23(e)(1-2) (a class settlement may be approved only after notice and hearing, and upon finding that it is "fair, reasonable, and adequate"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litigation,* N.D.Ohio No. 1:08-WP-65000 (MDL 2001), 2016 U.S. Dist. LEXIS 130467, at \*24-28 (Sep. 23, 2016) (granting final approval of a class settlement under Rule 23(e)).

### C.     The Results of the Notice Process Favor Approval

The results of the notice process are reported in the attached declaration from Settlement Class Administrator Rust Consulting, attached as Exhibit 2 and incorporated by reference herein. Mr. Chris Pikus is a Senior Project Manager for Rust Consulting, Inc., the firm retained as Settlement Administrator. (Ex. 2, Rust Consulting Decl. ¶¶ 1-3.) Mr. Pikus explains that:

> Rust was engaged by [the parties] to provide notification services in the *Parris McKnight, et al. v. Erico International Corporation* Settlement ("Settlement"). Duties included: a) preparing, printing and mailing of the Notice of Proposed Class Action Settlement and Change of Address form (the "Class Notice"); b) tracking of exclusions, objections and Change of Address forms; c) drafting and mailing of Settlement payment checks; and d) for such other tasks as the Parties mutually agree or the Court orders Rust to perform.

(*Id.* at ¶ 3.) Pursuant to the Settlement Agreement and the Court's Order, Mr. Pikus states that "[o]n September 26, 2022, Class Notices were mailed to 553 Class/Collective Members contained in the Class List via First Class mail." (*Id.* at ¶ 9.) So as to ensure that notices were sent to putative Class Members at the most updated and accurate address available, Mr. Pikus reports that:

> Rust performed 47 address traces on Class Notices returned as undeliverable for the first time. The address trace utilizes the Class/Collective Member's name, previous address and Social Security Number for locating a current address. Of the 47 traces performed, 39 more current addresses were obtained and Class Notices were promptly re-mailed to those Class/Collective Members via First Class mail. Of the 47 traces performed, Rust did not obtain updated addresses for eight (8)

undeliverable Class Notices. Of the 39 Class Notices mailed to a more current address identified from trace, one (1) Class Notice was returned to Rust as undeliverable a second time. As of this date, nine (9) Class Notices remain undeliverable.

***

As of this date, zero (0) Class Notices were returned by the Post Office with forwarding addresses attached as of November 25, 2022.

As of this date, Rust received one (1) request to re-mail the Class Notice which was promptly re-mailed via First Class mail.

(*Id.* at ¶¶ 10-12, respectively.) Mr. Pikus further reports that "[a]s of this date, Rust has received no requests for exclusion." (*Id.* at ¶ 13.) In addition, "[a]s of this date, Rust has received no objections." (*Id.* at ¶ 14.)

The fact that no Class Members have objected to the settlement, and that no Class Members have requested exclusion, unequivocally shows that the affected individuals support the settlement and want it to be approved.

### D.     The Requested Attorney Fee and Litigation Costs Reimbursement Should be Approved

Plaintiffs respectfully request approval of the attorneys' fees award and litigation costs reimbursement as provided in the Settlement Agreement in the total amount of $███████. (ECF #38-1, Settlement Agreement at PageID #298, ¶ 9.) After deduction for litigation costs, Plaintiffs' attorneys' fees award of $██████, or 32.6% of the common settlement fund, is slightly less than a one-third percentage of the fund award typically ordered in complex wage and hour cases. Plaintiffs assert that the value of the benefit rendered to the class eminently favors approval of the requested award, that Sixth Circuit authority unequivocally favors approval, and that the requested attorney fee award and costs reimbursement should be approved for all of the following reasons.

10

The Sixth Circuit has approved the percentage-of-the-fund method to determine a reasonable attorney's fee. *See Rawlings v. Prudential–Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993); *Harsh v. Kalida Mfg.,* No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at \*19-21 (N.D. Ohio Sep. 13, 2021); *Barnes v. Winking Lizard, Inc.,* N.D.Ohio No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at \*12-13 (Mar. 26, 2019). "Courts readily approve the percentage-of-the-fund method when a plaintiff obtains an exceptional result and avoids extended litigation time and costs." *Osman*, 2018 U.S. Dist. LEXIS 78222, at \*6 (citing *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09–CV–1608, 2010 WL 2490989, at \*7 (N.D. Ohio June 15, 2010) (approving one-third of the common fund as attorneys' fees) (additional citations omitted)). "In this district, 'the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier.'" *Swigart v. Fifth Third Bank*, S.D.Ohio No. 1:11-cv-88, 2014 U.S. Dist. LEXIS 94450, at \*14-15 (July 11, 2014) (citing *Connectivity Sys. Inc. v. Nat'l City Bank,* No. 2:08–CV–1119, 2011 WL 292008, at \*13 (S.D.Ohio Jan.26, 2011)); *Lonardo v. Travelers Indemnity Co*., 706 F. Supp. 2d 766, 790 (N.D. Ohio 2010) (percentage-of-fund is the "preferred method"). Another court within this district has noted that "[t]he percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel 'as to their expected recovery,' and encourag[es] early settlement before substantial fees and expenses have accumulated." *Dillworth v. Case Farms Processing, Inc*., N.D.Ohio No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at \*19 (Mar. 8, 2010).

1.     **The *Ramey* Six-Factor Test Supports the Reasonableness of a Fee Award**

Under the percentage-of-fund method, courts consider the six "*Ramey* Factors." *See Barnes*, 2019 U.S. Dist. LEXIS 65657, at \*13-17 (citing and applying *Ramey v. Cincinnati*

*Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). In determining the reasonableness of the fee award, a court considers the following factors: (1) the value of the benefit rendered to the class (*i.e.*, the results achieved); (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Ramey*, 508 F.2d at 1196 (citations omitted). As discussed below, Plaintiffs assert that each *Ramey* Factor favors approval of the requested award.

*__Ramey__ Factor 1 – The Value of the Benefits Rendered to the Class*: Plaintiffs represent that the recovery for the class here is exemplary. The parties deeply disputed the average or approximate number of minutes, if any, Defendant's employees worked either off the clock or worked after clocking in but prior to their shift starting time. From Plaintiffs' perspective, employees would generally clock in early and begin working, and their hours would be either rounded or edited against them resulting in non-payment of compensable time worked. Conversely, from Defendant's perspective, employees generally performed no job duties and engaged in no compensable, non-*de minimis* activities prior to their shift starting time. That said, the efforts of Class Counsel resulted in proposed settlement payments to *Rule 23 Subclass 1* Members representing, based on Class Counsel's calculations, an additional 7.95 minutes of pay per day worked over the class period based on a 5-day workweek (excluding federal holidays during the *Rule 23 Subclass 1* period, and an average constant workforce of 275.5 employees at an average hourly regular rate of $22.82). Based on Class Counsel's calculations, *Rule 23 Subclass 1* Members will receive approximately 159% of their alleged but disputed wage damages were they to have worked an additional 5 minutes per day off the clock, 99% of their

alleged but disputed wage damages were they to have worked an additional 8 minutes per day off the clock, or 80% of their alleged but disputed wage damages were they to have worked an additional 10 minutes per day off the clock. As to *Rule 23 Subclass 2*, class members will receive consideration for release of claims notwithstanding the practical and legal reality that these class members have virtually no damages during the release period, resulting in finality for all parties to this action. As to both subclasses, such allocations are "well above the 7 % to 11 % average result achieved for class members." *Dillworth*, 2010 U.S. Dist. LEXIS 20446, at *20 (citing *see* Frederick C. Dunbar, Todd S. Foster, Vinita M. Juenja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (National Economic Research Assocs. (NERA) June 1995)). As such, the settlement "provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue." *Barnes*, 2019 U.S. Dist. LEXIS 65657, at *14.

**_Ramey_ Factor 2 – *Society's Interest in Rewarding the Attorneys***: Plaintiffs represent that this factor favors approval because "society has a stake in rewarding the efforts of attorneys who bring wage and hour cases, as these are frequently complex matters." *Gentrup v. Renovo Servs., LLC*, 2011 U.S. Dist. LEXIS 67887, *14 (S.D. Ohio, June 24, 2011); *accord Barnes*, 2019 U.S. Dist. LEXIS 65657, at *14-15. Although the average recoveries of $▮▮▮▮ and $▮▮▮, as to *Rule 23 Subclasses 1* and *2*, respectively, are substantial amounts, Plaintiffs assert it likely would not make sense to file a lawsuit for such amounts.[2] Plaintiffs represent that only through the class action devise, as utilized by competent counsel, will the employees' rights to

---

[2] By way of example, the civil matter filing fee for the N.D. Ohio is currently $402.00. *See* https://www.ohnd.uscourts.gov/fee-schedule (last accessed Dec. 6, 2022).

allegedly unpaid overtime be vindicated. It is in society's interest that employees be lawfully and properly compensated for their work time.

**_Ramey_ Factors 3-4 – Value of the Services Rendered, and Contingent Fee Basis:** The legal services provided in this case were undertaken on a contingency fee basis whereby Plaintiffs as class representatives agreed to compensate counsel in the amount of 33 1/3% of the total amounts recovered – an amount commonly approved in wage and hour class/collective actions across the Sixth Circuit as reasonable. However, Class Counsel seeks to recover a slightly lesser amount of 32.6% of the common fund after deduction for reimbursed litigation expenses, which falls below the "one-third" reasonable amount. The contingent nature of the fee agreement meant that counsel bore the risk of receiving no fee if the case was not successful and strongly supports that the requested award is reasonable – as in any wage and hour matter, there is a real potential that Defendant could win outright and leave Plaintiffs and the class with no recovery. Moreover, as further explained below, the value of the services rendered on an hourly basis (as of December 8, 2022, the date Class Counsel's Declaration was drafted) is $▮▮▮▮▮▮, a lodestar multiplier of 1.57, which will likely fall to between 1.38 and 1.25 (*see* Section *V, D, 2, b* below) after the addition of additional hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion and memorandum, declaration and related exhibits, preparing for and participating in the Fairness Hearing, and any other work completed since December 8, 2022 and through the conclusion of this matter, including relating to finalizing this case and overseeing administration of the settlement. Plaintiffs represent that this multiplier is within the range of similar cases approved within the Sixth Circuit, and also favors approval. *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *17-18 (approving requested fee of $1,320,000 where cumulative lodestar amounted to

$512,885, or a 2.57 multiplier "which is consistent with other risk multipliers approved in complex class actions in this Circuit") (citing *see, e.g., Lowther v. AK Steel Corp., S.D.Ohio No. 1:11-cv-877,* 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5-6 (Dec. 21, 2012) (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)).

**_Ramey Factor 5 – Complexity of the Litigation_**: Fifth, "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *18 (citing *see Beckman v. KeyBank, N.A*., 293 F.R.D. 467, 478-479 (S.D.N.Y.2013))*.* As observed in *Barnes,* 2019 U.S. Dist. LEXIS 65657, at *16-17:

> This is particularly true [] where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

The case here was likewise complex, not only for the sheer amount of information required to be analyzed and processed in this class action, but because of the complexity of the calculations needed to be performed. Class Counsel's comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of over 10,168,000 data points from the records produced by Defendant which permitted the parties to compute a calculation of the alleged but disputed unpaid overtime for the Named Plaintiffs, FLSA collective members, and both putative Rule 23 subclasses. The analyses were difficult and time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

**_Ramey Factor 6 – Professional Skill and Standing of Counsel_**: Last, Class Counsel is highly experienced in wage and hour class and collective actions. (*See* ECF #38-4, Decl. of Counsel for Preliminary Approval at ¶¶ 6-13.) The professional standing and skill of the attorneys on both sides meets a high standard, and the competency and efficient handling of this

matter reflects what Plaintiffs represent is an exemplary recovery provided to Class Members. *See also Wright v. Premier Courier, Inc*., S.D.Ohio No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *18-19 (Aug. 17, 2018) (approving one-third attorney fee award and noting "the hours expended and time records submitted by Class Counsel [including Scott & Winters] further underscore their competency and efficient handling of this matter, favoring approval."); *Macaluso v. Zirtual Startups, LLC*, S.D.Ohio No. 2:19-CV-3616, 2021 U.S. Dist. LEXIS 154243, at *19 (Aug. 17, 2021) ("The professional skill and standing of the attorneys involved weighs in favor of granting Plaintiffs' counsel's requested fee award…. Plaintiff's counsel [Scott & Winters] brings substantial collective experience in litigating claims under [the] FLSA.")

## 2. A Lodestar Cross-Check Supports the Reasonableness of the Requested Fee

*Rawlings,* 9 F.3d at 517, held that "use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases" and "the determination of which method is appropriate in any given case will depend upon its circumstances." *Accord Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir.2016). The court has discretion to select one method over the other, or to use them in combination. *See, e.g., Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996) ("the district court based its fee award on a percentage of the common fund and then cross-checked the fee against class counsel's lodestar"); *Thorn v. Bob Evans Farms, Inc*., No. 2:12-CV-00768, 2016 U.S. Dist. LEXIS 195207, 2016 WL 8140448, at *3 (S.D. Ohio Feb. 26, 2016). However, a "cross-check of the attorney-fee request using Class Counsel's lodestar is optional…" *Feiertag v. DDP Holdings, LLC*, S.D.Ohio No. 14-CV-2643, 2016 U.S. Dist. LEXIS 122297, at *21 (Sep. 9, 2016).

Plaintiffs represent that, when applying a lodestar cross-check of a percentage-of-the-fund attorney fee award, the award is reasonable when it amounts to a multiplier of approximately 2.5. *See Castillo v. Morales, Inc.,* S.D.Ohio No. 2:12-CV-650, 2015 U.S. Dist. LEXIS 192936, at *22-23 (Dec. 22, 2015) ("Class Counsel's cumulative lodestar of $263,479.00, compared to its requested fee of $660,000.00, yields a lodestar multiplier of approximately 2.5. This is typical of lodestar multipliers in similar cases."). *Swigart,* 2014 U.S. Dist. LEXIS 94450, at *18 (approving multiplier of 2.57 in a FLSA case); *Feiertag,* 2016 U.S. Dist. LEXIS 122297, at *20-21 (citing *Johnson v. Midwest Logistics Sys., Ltd*., No. 2:11-cv-1061, 2013 U.S. Dist. LEXIS 74201, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (additional citations omitted)); *Ganci v. MBF Insp. Servs*., S.D.Ohio No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *18 (Dec. 3, 2019) ("Given that courts frequently approve attorney's fee awards equaling two to three times the lodestar amount, the fees sought by Class Counsel in this case are well within the reasonable range.") (citing *see Dillow v. Home Care Network, Inc*., No. 2:16-cv-612, 2018 U.S. Dist. LEXIS 170579, 2018 WL 4776977, at *7 (S.D. Ohio Oct. 3, 2018) (approving fee award that was "approximately 2.9 times the lodestar" and noting that the multiplier "is well within the acceptable range of multipliers" for a wage and hour action); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a "very acceptable" 3.06 multiplier and citing cases finding multipliers ranging from 4.3 to 8.74 to be reasonable) (additional citations omitted)).

### a. Class Counsel's Hourly Rates are Reasonable

Under the lodestar method, for purposes of determining a reasonable attorneys' fee, the hourly rate must be calculated in accordance with the prevailing market rate in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

17

Generally, the "prevailing market rate [is] defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Geier v. Sundquist,* 372 F.3d 784, 791 (6th Cir.2004) (citing *Adcock–Ladd v. Secretary of Treasury,* 227 F.3d 343, 350 (6th Cir.2000); *Osman*, 2018 U.S. Dist. LEXIS 78222, at *8. Class Counsel Joseph F. Scott, Ryan A. Winters, and Kevin M. McDermott II each have extensive experience in complex civil wage litigation, including Fed. R. Civ. P. 23 class actions, 29 U.S.C. § 216(b) collective actions, and individual wage and hour actions. (*See* ECF #38-4, Decl. of Counsel for Preliminary Approval at ¶¶ 6-13.) The applicable hourly rates for Class Counsel in this complex class/collective wage and hour matter are $500, $425, and $400, respectively.

Recently, Class Counsel Scott & Winters's requested hourly rates were found as reasonable in *Gunter v. Diamond Technical Services, Inc*., No. 2:20-cv-01428, ECF #43 (W.D. Penn. May 6, 2022) (Stickman, J.). In *Gunter*, noting that "[t]he Court [] finds that Class Counsel's attorney hours and hourly rates are reasonable," *id*., the court approved Joseph F. Scott's reasonable requested hourly rate of $550; Attorney Ryan A. Winters' reasonable requested hourly rate of $425; and Attorney Kevin M. McDermott II's requested reasonable hourly rate of $385, *see Gunter* Decl. of Class Counsel, ECF #41-3 at 5, ¶ 9. *See also Foster v. Residential Programs*, S.D.Ohio No. 2:19-cv-2358, 2021 U.S. Dist. LEXIS 30963, at *13 (Feb. 18, 2021) (approving hourly rates in wage and hour litigation ranging from $350 to $500); *Waters v. To You*, S.D.Ohio No. 3:19-cv-372, 2022 U.S. Dist. LEXIS 139084, at *13-14 (Aug. 1, 2022) (approving $600 to $350 hourly rates in wage and hour case); *Perry v. Beard*, S.D.Ohio No. 3:17-cv-161, 2021 U.S. Dist. LEXIS 13717, at *12 (Jan. 23, 2021) (noting that "[c]ourts within the Sixth Circuit have found hourly rates ranging from $300 to $450 to be reasonable for work on FLSA actions…") (citing *see also Berry v. Fun Time Pool & Spa, Inc*., No. 2:20-cv-

1610, 2020 U.S. Dist. LEXIS 148836, 2020 WL 4784654, at *2 (S.D. Ohio Aug. 18, 2020)

($445); *Rangel v. Paramount Heating & Air Conditioning, LLC*, No. 2:17-cv-473, 2020 U.S.

Dist. LEXIS 39157, 2020 WL 1080418, at *2 (S.D. Ohio Mar. 6, 2020) ($350); *Pineda v. Pit*

*Columbus, LLC*, No. 2:17-cv-668, 2017 U.S. Dist. LEXIS 195288, 2017 WL 5900559, at *4

(S.D. Ohio Nov. 28, 2017) ($450) (additional citations omitted)); *Clark v. Pizza Baker, Inc.,* No.

2:18-cv-157, 2022 U.S. Dist. LEXIS 198354, at *20-21 (S.D. Ohio Oct. 31, 2022) ($600); *Estate*

*of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *19 (S.D.

Ohio May 17, 2021) ($600 - $350); *Gresky v. Checker Notions Co.*, No. 3:21-cv-01203, 2022

U.S. Dist. LEXIS 154506, at *21-29 (N.D. Ohio Aug. 26, 2022) (N.D. Ohio matter approving as

reasonable a $400 rate for attorney who was admitted and started practicing wage and hour law

in November, 2013 (similar to Attorney McDermott), as well as a $450 rate for attorney who was

admitted to practice in 2009 (similar to Attorney Winters (admitted 2010), whose current rate is

$425)).

 Courts within this district have also cross-checked plaintiffs' counsel's requested

reasonable rates with rates reported in *The Economics of Law Practice in Ohio in 2013*

("*Economics of Law*"). *Hurt v. Commerce Energy, Inc.*, N.D.Ohio No. 1:12-cv-758, 2018 U.S.

Dist. LEXIS 168134, at *3 (Sep. 28, 2018) (citing Ohio State Bar Association, *The Economics of*

*Law Practice in Ohio in 2013: A Desktop Reference* (2013) ("*Economics of Law*")[3]). In *Hurt*, a

Rule 23 and FLSA matter as here, the court stated that the closest available category for

plaintiff's counsel was that of "Trial Practice, not PI (General Civil)." *Id.* at *2018 U.S. Dist.

LEXIS 168134, at *3, fn. 12. On this parameter, Class Counsel's requested rates here fall

---

[3] Available at https://www.ohiobar.org/globalassets/home/member-benefits/personal-finance/osba_econoflawpracticeohio.pdf (last accessed Dec. 8, 2022).

between the 75th and 95th percentiles. *Economics of Law* at 40. Class Counsel's attorney rates also fall between the 75th and 95th percentiles under the category of Downtown Cleveland office location. *Id.* at 39. However, as noted in *Hurt*, 2018 U.S. Dist. LEXIS 168134, at *3, "the sought rates are on the high end of the spectrum. But the *Economics of Law* data is dated and attorney rates have increased since its publication. And, importantly, Plaintiffs requested fees are within the spectrum of reported rates." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551, 130 S. Ct. 1662, 176 L. Ed. 2d 494 (2010) ("the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.").

### b.    Class Counsel's Hours Expended are Reasonable

As of December 8, 2022, Class Counsel had a collective approximately 398.9 hours in this case – a fee lodestar of $167,050.00 based on the above rates. Specifically, Joseph F. Scott had 53.8 hours at $500 per hour; Ryan A. Winters had 84.4 hours at $425 per hour; and Kevin M. McDermott II had 260.7 hours at $400 per hour. (Ex. 4, Decl. of Class Counsel at ¶ 18.) Class Counsel's multiplier as of December 8, 2022 was 1.57, substantially less than the 2.5+ multiplier routinely approved in similar wage and hour cases referenced above that were found as reasonable. (*See id.* at ¶¶ 18-19.)

The tasks required of Class Counsel in this case included pre-litigation investigation of Named Plaintiffs,' Opt-In Plaintiffs,' and other each subclass members' claims; preparation of the Complaint; negotiation and submission of the parties' Rule 26(f) report; and investigation of current and former employees of Defendant and putative Class Members. (*Id.* at ¶ 15.) Prior to and at the onset of litigation, Class Counsel received many dozens of phone calls and other

communications, and spent substantial time responding thereto, from Named Plaintiffs, Opt-In Plaintiffs, and other subclass members. (*Id*.)

Prior to the April 1, 2022 mediation (which ultimately resulted in a settlement on April 4, 2022 after each parties' consideration and acceptance of the mediator's proposal and recommendation), Defendant produced Microsoft Excel compatible spreadsheets containing payroll data comprised of approximately 10,168,000 data points for approximately 453 of Defendant's hourly workers, and "LegacyTimekeeping Sample" data comprised of approximately 30,000 data points for a statistically significant sample of approximately 60 of Defendant's hourly workers alleged to have been affected by practices and policies Plaintiffs allege resulted in underpayment of time worked. (*Id*. at ¶ 16.) Class Counsel electronically transcribed all relevant provided data into an electronic, aggregate computable format. (*Id*.) Class Counsel's comprehensive analysis and final computations permitted a calculation of the unpaid wages for the Plaintiffs and all other members of the proposed settlement subclasses. (*Id*.) In advance of the mediation, Plaintiffs provided a comprehensive mediation position statement and settlement demand which was provided to both defense counsel and the mediator. (*Id*.) Class Counsel's comprehensive investigation included an analysis of the wage-and-hour information and other data and documents comprising of millions of data points from the records produced by Defendant which permitted the parties to compute a calculation of the alleged but disputed unpaid overtime for the Named Plaintiffs, FLSA Collective members, and putative Rule 23 Subclasses members. (*Id*.) Based on the size of the data set and the complicated issues as outlined in Plaintiffs' Complaint, the analyses were difficult and incredibly time-consuming, but proved instrumental to the negotiation of the proposed Settlement.

Finally, and as the Court is aware of as a result of the parties' requests for extension in

connection with filing their Preliminary Approval Motion, final negotiations of the ultimately

51-page Settlement Agreement filing (ECF #38-1) proved highly contentious. (*Id.* at ¶ 17.) The

parties deeply disputed many of the terms of the final written Settlement Agreement, requiring

the filing of three (3) separate extensions of time (*see* ECF ##32, 34, 35 (noting that counsel had

"exchang[ed] many communications on an almost daily basis, including nearly two dozen emails

and many phone calls")) – for which the parties sincerely appreciate the Court's understanding

and latitude – resulting in a comprehensive settlement encompassing all issues. (Ex. 4, Decl. of

Class Counsel at ¶ 17.)

Moreover, Class Counsel's lodestar has not been adjusted to account for the time Class

Counsel will expend fulfilling the obligations in the Settlement Agreement, monitoring the

administration of the Settlement, continuing to respond to questions and inquiries from FLSA

Collective action members, Named Plaintiffs, the hourly employees of Defendant who comprise

of the *Rule 23 Subclass 1* and *Rule 23 Subclass 2*, and continuing representation of Plaintiffs and

Class Members through the conclusion of this matter and disbursement of settlement proceeds.

(*Id.* at ¶ 20.) Class Counsel have extensive experience in these matters, and are well familiar with

the many additional tasks that Counsel will dutifully complete through this matter's conclusion.

(*Id.*) The timeline for settlement administration established by the parties' agreement will require

the settlement administration to last a minimum of six months after the final approval order is

entered. Based upon prior settlements of similar size, Counsel anticipates expending on average

an additional two (2) to eight (8) hours each month for several months in settlement

administration after the date the final approval order is entered. (*Id.*) Once final approval is

entered, and settlement checks are sent to all Class Members, Class Counsel will almost certainly

receive many telephone calls, text messages and emails from Class Members regarding the case.

(*Id.*) Class participants routinely contact Counsel for questions regarding the exact nature of the litigation, the effect of settlement, the precise calculation methodology for their individual awards, and the anticipated timeline for receiving a payment, even after the entering of final approval. (*Id.*; *see* ECF #38-1, Settlement Agreement at PageID ##293-304, ¶¶ 8-11.) Moreover, with a total class number of this size, there will inevitably be uncashed checks. (Ex. 4, Decl. of Class Counsel at ¶ 20.) The demands on Class Counsel in completing its obligations as Class Counsel, as well as overseeing administration of a settlement of this size, is of no small undertaking. (*Id.*)

Class Counsel's lodestar also does not include the approximately 20-30 additional hours counsel collectively has and will spend preparing, reviewing changes by defense counsel, and finalizing the briefing of this motion and related exhibits up to and until the filing of this motion (between December 8, 2022 (Class Counsel's declaration date) and the date of this filing), preparing for and participating in the Fairness Hearing, and any other work completed since December 8, 2022 to the date the final approval order is entered. (*Id.* at ¶ 21.) Class Counsel therefore expects that the total attorney hours expended at the final conclusion of this matter, more than six (6) months from the drafting of Class Counsel's declaration, will be approximately 430.9 - 476.9 total lodestar hours, a lodestar amount (based upon an average rate of $441.67) of $190,314.17 - $210,630.83, or a lodestar multiplier of 1.38 – 1.25. (*Id.*)

Plaintiffs represent, given that Class Counsel's current and final lodestar is on the low-end of the acceptable range, a lodestar cross-check of the attorneys' fees to be paid to Class Counsel eminently supports the reasonableness of the fee request. *See, e.g., Waters*, 2022 U.S. Dist. LEXIS 139084, at *13 (approving 3.79 multiplier in FLSA case) (citing *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *19 (S.D. Ohio Nov. 5,

2020) (approving a multiplier of 5.29)); *Swigart*, 2014 U.S. Dist. LEXIS 94450, at *18 (approving 2.57 multiplier); *Dillow*, 2018 U.S. Dist. LEXIS 170579, at *17-18 (approving 2.9 multiplier); *Lowther*, 2012 U.S. Dist. LEXIS 181476, at *17 (approving 3.06 multiplier and noting ranges from 4.3 to 8.74 have been found to be reasonable); *Ganci*, 2019 U.S. Dist. LEXIS 207645, at *18 ("courts frequently approve attorney's fee awards equaling two to three times the lodestar amount...").

### c. The Costs Expended by Class Counsel were Both Reasonable and Necessary

Class Counsel also maintain records regarding costs expended on each case. (Ex. 4, Decl. of Class Counsel at ¶ 14.) Class Counsel has incurred, and will incur through administration of this matter, reimbursable out-of-pocket expenses in this case in the amount of $███████. (*Id.* at ¶ 23.)  These costs and expenses consist of the case filing fee, service of the complaint, postage costs, and mediation-related and mediator's fees, in the total amount of $██████. (*Id.*; *see* ECF #38-1, Settlement Agreement at PageID #298, ¶ 9.) In addition, the settlement includes a payment to settlement administrator Rust Consulting for costs of administration in the amount of $███████. (*Id.* at PageID #304, ¶ 11.) These expenses constitute costs that were reasonably necessary to prosecute and finalize the action and administrate the settlement.

## VI.     CONCLUSION

For the reasons addressed herein and in the Preliminary Approval Motion, the parties respectfully ask the Court to approve this Settlement and enter the Proposed Final Order and Judgment attached as Exhibit 1, which incorporates the Final Class Member List attached as Exhibit 3.


Respectfully submitted,

24

*/s Ryan A. Winters*
Joseph F. Scott (0029780)
Ryan A. Winters (0086917)
**Scott & Winters Law Firm, LLC**
P: (216) 912-2221     F: (440) 846-1625
50 Public Square, Suite 1900
Cleveland, OH 44113
jscott@ohiowagelawyers.com
rwinters@ohiowagelawyers.com

Kevin M. McDermott II (0090455)
**Scott & Winters Law Firm, LLC**
P: (216) 912-2221     F: (440) 846-1625
11925 Pearl Rd., Suite 310
Strongsville, Ohio 44136
kmcdermott@ohiowagelawyers.com

*Attorneys for Plaintiffs and*
*Interim Class Counsel*

*/s Carrie A. McAtee (via email consent)*
Carrie A. McAtee (MO 54949)
**Shook, Hardy & Bacon LLP**
2555 Grand Blvd.
Kansas City, Missouri 64108
Ph: (816) 559-2512
Email: cmcatee@shb.com

Gust Callas (0015815)
**Black, McCuskey, Souers & Arbaugh**
220 Market Avenue South, Suite 1000
Canton, Ohio 44702
Ph: (330) 456-8341
Fax: (330) 456-5756
Email: gcallas@bmsa.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s Ryan A. Winters*
Ryan A. Winters (0086917)

## CERTIFICATE OF COMPLIANCE WITH PAGE LIMITATION REQUIREMENTS

I, undersigned filing counsel, state that this matter has been assigned to the standard track, and I hereby certify that the above Memorandum in Support complies with the Court's December 9, 2022 Order [non-document] allowing the brief filed herein to exceed the page limitations set forth in Local Rule 7.1(f). (*See also* ECF #43 (requesting not to exceed page limitation extension of 25 total pages).)

*/s Ryan A. Winters*
Ryan A. Winters (0086917)