## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| PARRIS MCKNIGHT, *et al.*, | ) | Case No. 1:21-cv-01826 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| ERICO INTERNATIONAL | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER GRANTING CLASS CERTIFICATION,
## FINAL APPROVAL OF SETTLEMENT, AND ASSOCIATED RELIEF

On September 27, 2021, fourteen named plaintiffs filed a class and collective action complaint alleging that Defendant Erico International Corporation failed to pay them, and others similarly situated, for time worked.  (ECF No. 1.)  Following private mediation, the parties reached a settlement, for which the Court previously granted preliminary approval.  (ECF No. 41.)  The parties jointly move for final approval of their settlement, certification of the settlement's two subclasses, and other associated relief.  (ECF No. 45; ECF No. 46.)  The Court held a fairness hearing on that motion on December 21, 2022 and took the motion under advisement.  For the reasons that follow, the Court **GRANTS** the parties' joint motion and **DISMISSES** this case **WITH PREJUDICE**.

## FACTUAL AND PROCEDURAL BACKGROUND

Lead plaintiff, Parris McKnight, and thirteen other named plaintiffs brought this action in September 2021, on their behalf and others similarly situated, under

29 U.S.C. § 216(b) and Rule 23.  (ECF No. 1, ¶¶ 1–3, PageID #3.)  There are now 81 collective action opt-in plaintiffs and 566 members of the Rule 23 class.  (ECF No. 45-2, ¶ 14, PageID #552; ECF No. 46-2, ¶ 14, PageID #629.)

The named Plaintiffs formerly worked or presently work for Defendant Erico International Corporation.  (ECF No. 1, ¶¶ 31–44, PageID #7–9.)  Erico International is an Ohio corporation that manufactures components for electrical and fastening solutions.  (ECF No. 15, ¶¶ 22–23, PageID #132–33.)  According to the complaint, the named Plaintiffs frequently worked more than forty hours per workweek.  (ECF No. 1, ¶ 48, PageID #9.)  But Erico International avoided paying them overtime through "unlawful time rounding policies," in violation of the Fair Labor Standards Act and Ohio law.  (*Id.*, ¶¶ 50 & 77–89, PageID #9 & #15–17.)  Defendant denies these allegations.  (*See* ECF No. 15.)

## A.     Discovery and Mediation

The parties engaged in discovery.  Defendant produced payroll data comprised of approximately 10,168,000 data points, covering around 453 of Erico International's hourly workers, and "LegacyTimekeeping Sample" data consisting of approximately 30,000 data points, covering a "statistically significant sample of approximately 60 of Defendant's hourly workers alleged to have been affected" by Defendant's rounding practices and policies.  (ECF No. 45-4, ¶ 16, PageID #582; ECF No. 46-4, ¶ 16, PageID #659.)  Class counsel used that data to calculate Plaintiffs' alleged (though disputed) unpaid overtime and to formulate a mediation position statement and demand.  (*Id.*)

Mediation occurred on April 1, 2022.  (ECF No. 38-4, ¶ 22, PageID #353; ECF No. 39-3, ¶ 22, PageID #476.)  Frank A. Ray, an experienced attorney and respected mediator, made a proposal and recommendation.  (*Id.*)  Three days later, the parties accepted his proposal.  (*Id.*)  The parties spent the next three and a half months drafting settlement documents.  (ECF No. 38-4, ¶ 23, PageID #353; ECF No. 39-3, ¶ 23, PageID #476; *see also* ECF No. 32; ECF No. 34; ECF No. 35.)

### B.    Settlement

On July 29, 2022, the Court received the parties' proposed settlement and joint motion for preliminary approval.  (ECF No. 38; ECF No. 38-1; ECF No. 39; ECF No. 39-1.)  Under the settlement, Defendant agreed to pay a total of $ ███████, without admitting liability.    (ECF No. 38-1, PageID #287; ECF No. 39-1, PageID #417.)  That amount covers several separate payments.

*First*, it covers payments to two subclasses.  (ECF No. 38-1, PageID #293–98; ECF No. 39-1, PageID #423–28.)  Rule 23 Subclass 1, consisting of 397 class members, will receive a total of $ ██████.  (*See* ECF No. 45-3; ECF No. 46-3.)  How much each member receives is based proportionally on their respective weeks of service at Erico International from February 5, 2018, to April 18, 2020.  (ECF No. 38-1, PageID #286; ECF No. 39-1, PageID #416.)  Members of the collective action will be entitled to additional liquidated damages under the FLSA and will recover for time worked extending back to June 29, 2017.  (*Id.*)

Meanwhile, each member of Rule 23 Subclass 2, comprised of 439 class members, will receive $ ████.  (*See* ECF No. 45-3; ECF No. 46-3.)  That amount comes from $ ██████ set aside for Rule 23 Subclass 2.  (ECF No. 38-1, PageID #294; ECF

No. 39-1, PageID #424.)  Members of the collective action who were employed during the class period of Rule 23 Subclass 2 will share in this recovery.  (*Id.*)  The parties represent that the differences in recovery among the two subclasses arise from Erico International's protocol for staggering shifts.  (ECF No. 45, PageID #521; ECF No. 46, PageID #599.)  Specifically, on March 13, 2020, Erico International implemented a Covid-19 safety protocol that required employees to clock out and leave its facility fifteen minutes before the end of their scheduled shift time.  (*Id.*)  Therefore, Defendant argues that it was not possible for any employee to have worked unpaid overtime from April 19, 2020, to April 1, 2022.  (*Id.*)

The two subclasses will receive the amounts above in a settlement check within ten days after Erico International makes the $██████  (ECF No. 38-1, PageID #296; ECF No. 39-1, PageID #426.)   In exchange for these payments, Plaintiffs release Erico International from all claims arising through April 1, 2022 under the Ohio Minimum Fair Wage Standards Act, the FLSA, and related statutes. (ECF No. 38-1, PageID #287–89; ECF No. 39-1, PageID #417–19.)

*Second*, the settlement covers attorneys' fees, litigation costs, and administration expenses.  It specifies that class counsel will receive a fee award of $██████ and a $██████ reimbursement for litigation costs.  (ECF No. 38-1, PageID #298; ECF No. 39-1, PageID #428.)  Litigation costs include the case filing fee, service costs, postage, and mediation-related fees.  (ECF No. 45-4, ¶ 23, PageID #586; ECF No. 46-4, ¶ 23, PageID #663.)  Both attorneys' fees and costs are paid with payments to class members.  (*See* ECF No. 38-1, PageID #298; ECF No. 39-

4

1, PageID #428.)  Further, the settlement specifies that Erico International will pay $███ settlement administrator, Rust Consulting, Inc.  (ECF No. 38-1, PageID #304; ECF No. 39-1, PageID #434.)  As the settlement administrator, Rust Consulting must prepare, print, and mail class notices; track exclusions, objections, and change of address forms; and draft and mail payment checks.  (ECF No. 45-2, ¶ 3, PageID #550–51; ECF No. 46-2, ¶ 3, PageID #627–28.)

*Finally*, the settlement provides for service awards to the named Plaintiffs. Lead Plaintiff Parris McKnight will receive a $███ service award.  (ECF No. 38-1, PageID #300; ECF No. 39-1, PageID #430.)  Counsel represent that Mr. McKnight approached them to institute this litigation, responded to dozens of inquiries from potential class members, attended the April 1, 2022 mediation, faithfully represented all class members' interests, and provided counsel with important information.  (ECF No. 38-4, ¶ 32, PageID #357; ECF No. 39-3, ¶ 32, PageID #480.) The other thirteen named plaintiffs are each set to receive a $███ award.  (ECF No. 38-1, PageID #300–01; ECF No. 39-1, PageID #430–31.)  They consulted with class counsel at critical stages and provided important and necessary documents.  (ECF No. 38-4, ¶ 32, PageID #357; ECF No. 39-3, ¶ 32, PageID #480.)

## C.  Preliminary Approval

On August 25, 2022, the Court granted preliminary approval to the settlement. (ECF No. 41.)  That order also conditionally certified the two settlement classes, appointed Scott & Winters Law Firm, LLC as interim class counsel, and scheduled a fairness hearing.  (*Id.*, ¶¶ 8–11 & 15–16, PageID #495–97.)  Further, it approved the

notice form (ECF No. 38-2; ECF No. 39-2) and directed the process for notice in advance of the fairness hearing (ECF No. 41, ¶ 12 PageID #496).

### D.   Progress Toward Final Approval

Consistent with the Court's preliminary approval order, Rust Consulting began providing notice to class members on September 26, 2022. (ECF No. 45-2, ¶ 9, PageID #552; ECF No. 46-2, ¶ 9, PageID #629.)  Rust Consulting sent class notice to 553 putative class/collective action members, though it was later informed that one of those individuals should not have received class notice.  (ECF No. 45-2, ¶¶ 9 & 15, PageID #552; ECF No. 46-2, ¶¶ 9 & 15, PageID #629.)  Of the relevant 552 mailings, 47 were undeliverable.  (ECF No. 45-2, ¶ 10, PageID #552; ECF No. 46-2, ¶ 10, PageID #629.)  Rust then performed address traces and sent class notices to 39 updated addresses.  (*Id.*)  One mailing was again undeliverable.  (*Id.*)  In total, nine class notices remain undeliverable, resulting in notice to 98% of class members.  (*Id.*)

Objections and exclusions had to be postmarked by November 25, 2022.  (ECF No. 45-2, ¶ 9, PageID #552; ECF No. 46-2, ¶ 9, PageID #629.)  As of December 14, 2022, no class members objected to or requested exclusion from the settlement.  (ECF No. 45-2, ¶¶ 13–14, PageID #552; ECF No. 46-2, ¶¶ 13–14, PageID #629.)

On December 14, 2022, the parties jointly moved for certification of the settlement classes, final approval of the settlement, and associated relief.  (ECF No. 45; ECF No. 46.)  The Court held a fairness hearing on December 21, 2022.

### ANALYSIS

Under Rule 23(e), "a class proposed to be certified for purposes of settlement" requires court approval.  A court may approve the settlement only after a hearing

and only on a finding that the settlement "is fair, reasonable, and adequate" after considering certain factors listed in the Rule.  Fed. R. Civ. P. 23(e)(2).  The Rule directs the Court to consider the representation class counsel provided, whether the parties negotiated the settlement at arm's length, the adequacy of the relief provided to the class, and the relative treatment of class members relative to one another.  *Id.* Further, under a prior version of the Rule, the Sixth Circuit identified additional considerations that guide the inquiry into whether a class settlement is fair, reasonable, and adequate.  *See, e.g.*, *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  These additional considerations include:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Id.* (quoting *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In 2018, an amendment to the Rule emphasized that the central inquiry remains whether the settlement is fair, reasonable, and adequate.

In addition, the requirements of Rule 23(e) for approval of a class settlement sit on top of the other safeguards in Rule 23 for class certification.  To obtain class certification, Plaintiffs must prove that they satisfy the four procedural requirements in Rule 23(a) and at least one requirement in Rule 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).  The Court proceeds to analyze each of these requirements under Rule 23(a), Rule 23(b), and Rule 23(e).

## I.     Certification of the Settlement Subclasses

As noted, the settlement covers two subclasses for settlement purposes—Rule 23 Subclass 1 and Rule 23 Subclass 2.  Erico International's Covid-19 shift staggering protocol differentiates each subclass.  (ECF No. 45, PageID #521; ECF No. 46, PageID #599.)   Rule 23 Subclass 1 covers "all former and current non-exempt production employees of Defendant Erico International Corporation who worked at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between February 5, 2018 to April 18, 2020, excluding such employees who released Ohio wage and hour law claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon v. Erico International Corp.*, No. 1:20-cv-00246-PAB." (ECF No. 38-1, PageID #284–85; ECF No. 39-1, PageID #414–15.)  Rule 23 Subclass 2 consists of "all former and current non-exempt production employees of Defendant Erico International Corporation who worked at Defendant's ECN and/or ESN manufacturing facilities in Solon, Ohio at any time between April 19, 2020 to April 1, 2022, excluding such employees who released Ohio wage and hour law claims as named or opt-in plaintiffs in settlement of the action *Patricia Hardimon v. Erico International Corp.*, No. 1:20-cv-00246-PAB."  (ECF No. 38-1, PageID #285; ECF No. 39-1, PageID #415.)  In its preliminary approval order, the Court conditionally certified those subclasses.  (ECF No. 41, ¶¶ 8–10, PageID #495.)

### I.A.    Rule 23(a)

Both subclasses satisfy Rule 23(a)'s procedural requirements.   Rule 23(a) requires numerosity, commonality, typicality, and adequacy.  *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).  Additionally, the Sixth Circuit has adopted an

implicit ascertainability requirement. *See Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (citing, among other authorities, *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532 (6th Cir. 2012)).

Numerosity requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Rule 23 Subclass 1 and Rule 23 Subclass 2 possess 397 and 439 class members, respectively. These numbers are substantial enough for each subclass to satisfy the numerosity requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006); *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-cv-00983, 2012 WL 6042839, at *5 (S.D. Ohio Dec. 4, 2012) (noting that a class of 40 or more is generally sufficiently numerous).

Commonality requires the class to share common questions of law or fact. Fed. R. Civ. P. 23(a)(2). To assess commonality, courts consider whether there is a common contention that, if resolved, would address all claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, each subclass's claim turns primarily on a common issue: whether Defendant's rounding policies violated the Fair Labor Standards Act and Ohio law during the class period. Because the answer to that question will likely drive resolution, the subclasses satisfy Rule 23's commonality requirement.

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A named plaintiff's claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims

are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (citing *In re American Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  As to Rule 23 Subclass 1, there is some variation between the amounts to be paid to the named Plaintiffs and the other class members.  (*See* ECF No. 45-3; ECF No. 46-3.)  But these differences in damages—based on the time each plaintiff worked and *not* their legal claims (ECF No. 38-1, PageID #286; ECF No. 39-1, PageID #416)— do not affect typicality.  The named Plaintiffs' claims arise from the same payroll policies and present the same legal theories as those of both subclasses' members.  Accordingly, their claims are typical of each subclass.

Adequacy requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Sixth Circuit articulates two criteria for determining adequacy:  "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel."  *Senter v. General Motors Corp.*, 532 F.2d 511, 524 (6th Cir. 1976) (citations omitted).  Each subclass satisfies both criteria.  The named Plaintiffs for each of Rule 23 Subclass 1 and 2 have common financial interests with the unnamed members.  (ECF No. 45-3; ECF No. 46-3.)  Moreover, interim class counsel is qualified given its "extensive experience in complex civil wage litigation" and "has vigorously represented" Plaintiffs.  (ECF No. 45-4, ¶¶ 5 & 24, PageID #577 & #586; ECF No. 46-4, ¶¶ 5 & 24, PageID #654 & #663.)

Finally, ascertainability requires that a class definition be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young*, 693 F.3d at 537–38 (citation omitted). In this case, payroll and management software can objectively determine whether either Rule 23 Subclass 1 or 2 includes Erico International's past or current employees. Therefore, the class definitions are sufficiently definite.

### I.B. Rule 23(b)(3)

Likewise, the subclasses satisfy a requirement of Rule 23(b), specifically Rule 23(b)(3). To certify a class, Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making these findings, courts consider (1) the interests of class members in individually controlling the litigation; (2) the extent and nature of any litigation concerning the dispute class members have already initiated; (3) the desirability of concentrating litigation of the claims in the particular forum; and (4) the likely difficulties in managing the class action. *Id.*

### I.B.1. Predominance

Predominance "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Young*, 693 F.3d at 544 (quotation

omitted).   Where predominance is satisfied, if a plaintiff cannot prove at trial a common question that predominates over individual issues, the claim will fail on the merits for the entire class.  *Glazer v. Whirlpool Corp. (In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.)*, 722 F.3d 838, 858 (6th Cir. 2013) (citing *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)).

Here, the subclasses are sufficiently cohesive.  As described above, the success of each subclass's claim turns on common questions regarding Plaintiffs' entitlement to overtime pay based on the common practices of Erico International.  Answering that question does not require the Court to consider facts specific to individual employees—at least not to a degree that would cause any such individual inquiries to predominate over the common questions capable of classwide resolution.  While some matters vary among class members, such as the extent of their damages given the time worked, that dissimilarity does not defeat a finding of predominance for either subclass.  *See Hicks v. State Farm Fire & Cas. Co.*, 965 F.3d 452, 460 (6th Cir. 2020) (citation omitted).

### I.B.2. Superiority

Superiority requires courts to consider whether a class action "is a better way than individual litigation to adjudicate a claim."  *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407 (E.D. Mich. 2012) (citing *Daffin*, 458 F.3d at 554).  "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."  *Young*, 693 F.3d at 545 (quoting *Amchem*, 521 U.S. at 617 (citation omitted)).  Without a class action, then, "[w]here it is not economically

feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980).

Rule 23 Subclass 2 presents a textbook case appropriate for class certification. Each member of that class will recover only $██. (*See* ECF No. 45-3; ECF No. 46-3.) Given the Court's filing fee of $402.00 alone, members of this subclass have next to no incentive to bring individual actions, making a class action the superior method of adjudication. *See Amchem*, 521 U.S. at 617.

Rule 23 Subclass 1 presents a closer call. Members of this subclass will recover an average of $██. (ECF No. 45, PageID #519; ECF No. 46, PageID #597.) Some will receive up to $██. (ECF No. 45-3; ECF No. 46-3.) Focusing only on these numbers, one might argue that individual members could sue in a municipal court. But several members of Rule 23 Subclass 1 will recover $██. (*Id.*) Overall, these facts show similar incentive issues to those described for Rule 23 Subclass 2. Moreover, superiority asks whether class adjudications will "achieve economies of time, effort, and expense." *Amchem*, 521 U.S. at 615. On this account, a class action is the superior method of adjudication. Rule 23 Subclass 1 consists of 397 members. (*See* ECF No. 45-3; ECF No. 46-3.) Resolving all those claims in one action avoids a multiplicity of litigation and promotes judicial economy, even with the burdens of class machinery.

Additionally, the factors listed in Rule 23(b)(3) support a finding of superiority. *See* Fed. R. Civ. P. 23(b)(3)(A)–(D). First, there is no evidence that members of

Rule 23 Subclass 1 desire to bring litigation separately.  Indeed, when given the option to request exclusion, not a single class member opted out.  (ECF No. 45-2, ¶¶ 13–14, PageID #552; ECF No. 46-2, ¶¶ 13–14, PageID #629.)  Second, there is no related pending litigation.  (ECF No. 38, PageID #269; ECF No. 39, PageID #399.)  Finally, concentrating litigation in one forum will foster efficiency and minimize expenses.

For these reasons, the Court finds that a class action is a superior method for adjudicating the claims in each subclass.

*     *     *

Satisfied that they meet the requirements of Rule 23(a) and Rule 23(b)(3), the Court **CERTIFIES** Rule 23 Subclass 1 and Rule 23 Subclass 2 as classes for purposes of settlement.

## II.    Appointment of Class Counsel

Because the Court certifies two classes, it must appoint class counsel.  Fed. R. Civ. P. 23(g)(1).  Previously, it appointed Scott & Winters Law Firm, LLC on an interim basis.  (ECF No. 41, ¶ 15, PageID #497.)  Scott & Winters requests that the Court make that appointment permanent.  (ECF No. 45, PageID #518; ECF No. 46, PageID #596.)

A court may appoint an applicant as class counsel "only if the applicant is adequate under Rule 23(g)(1) and (4)."  Fed. R. Civ. P. 23(g)(2).  Under Rule 23(g)(1)(A), the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Also, the Court may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Finally, Rule 23(g)(4) requires class counsel to "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(4).

With these factors in mind, the Court finds that Scott & Winters satisfies Rule 23(g)(1) and (4). Scott & Winters has thoroughly identified and investigated the potential claims. To prepare for the parties' mediation, counsel reviewed over 10,000,000 data points. (ECF No. 45-4, ¶ 16, PageID #582; ECF No. 46-4, ¶ 16, PageID #659.) That review helped them create a comprehensive mediation position statement and demand. (*Id.*) Additionally, the three Scott & Winters' attorneys—Ryan A. Winters, Joseph S. Scott, and Kevin McDermott, II—have "extensive experience in complex civil wage litigation," including Rule 23 class actions. (ECF No. 45-4, ¶ 5, PageID #577; ECF No. 46-4, ¶ 5, PageID #654.) More generally, Mr. Winters' declaration identifies over thirty other FLSA or analogous State-law cases where his firm served as counsel. (ECF No. 38-4, ¶ 13, PageID #347–50; ECF No. 39-3, ¶ 13 PageID #470–73.)

As to the third factor, counsel's briefing throughout this litigation has demonstrated sufficient knowledge of the law. (*See, e.g.*, ECF No. 38; ECF No. 39; ECF No. 45; ECF No. 46.) Finally, counsel has committed significant resources to represent the class, specifically, three attorneys and over 398 hours of work. (ECF

No. 45-4, ¶ 18, PageID #583; ECF No. 46-4, ¶ 18, PageID #660.) On this record, and because counsel has vigorously represented Plaintiffs, the Court further finds that Scott & Winters have and will fairly and adequately represent the subclasses. (ECF No. 45-4, ¶ 24, PageID #586; ECF No. 46-4, ¶ 24, PageID #663.)

Accordingly, the Court **APPOINTS** Scott & Winters as class counsel.

## III.    Approval of the Settlement

The settlement seeks to resolve both an FLSA collective action and a Rule 23 class action. (*See* ECF No. 38-1, PageID #277–78; ECF No. 39-1, PageID #407–08.) Regarding the former, the Court previously found that the settlement is "fair, reasonable, and adequate" and "satisfied the standard for approval . . . under 29 U.S.C. § 216 and Section 4111.01 *et seq.*" (ECF No. 41, ¶ 7, PageID #495.) The Court re-adopts those findings here and **APPROVES** the settlement agreement as to Plaintiffs' FLSA collective action.

As for Plaintiffs' Rule 23 class action, approval of a settlement occurs in three stages. *Bailey v. Verso Corp.*, 337 F.R.D. 500, 505 (S.D. Ohio 2021) (citations omitted). First, the court preliminarily approves the parties' proposed settlement. *Id.* Second, the parties provide class members notice of the proposed settlement. *Id.* Finally, following a hearing, the court issues final approval. *Id.* Previously, the Court granted preliminary approval on August 25, 2022 (ECF No. 41), and the parties began the notice process on September 26, 2022. (ECF No. 45-2, ¶ 9, PageID #552; ECF No. 46-2, ¶ 9, PageID #629.) At this third and final stage, a court determines whether the notice process was sufficient and whether the proposed settlement agreement is fair,

reasonable, and adequate. *Harsh v. Kalida Mfg., Inc.*, No. 3:18-cv-2239, 2021 WL 4145720, at *3 (N.D. Ohio Sept. 13, 2021).

### III.A. Sufficient Notice

Rule 23(c)(2)(B) requires all members of a class certified under Rule 23(b)(3), who can be identified through reasonable effort, to receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, the notice "must clearly and concisely state in plain, easily understood language" all the information specified in Rule 23(c)(2)(B)(i)–(vii). *Id.* Finally, the notice must comply with due process. *See Barnes v. Winking Lizard, Inc.*, No. 1:18-cv-952, 2019 WL 1614822, at *4 (N.D. Ohio Mar. 26, 2019); *Harsh*, 2021 WL 4145720, at *4.

In granting preliminary approval, the Court approved the class notice form and the protocol for distribution as consistent with Rule 23(c)(2)(B) and due process. (ECF No. 41, ¶ 12, PageID #496.) Therefore, the question becomes whether the results of the notice process uncovered inadequacies. *See Arp v. Hohla & Wyss Enters., LLC*, No. 3:18-cv-119, 2020 WL 6498956, at *4 (S.D. Ohio Nov. 5, 2020). Based on its independent review of the record, the Court finds none. Rust Consulting sent initial class notices by first-class mail to 552 putative class and collective members. (ECF No. 45-2, ¶¶ 9 & 15, PageID #552; ECF No. 46-2, ¶¶ 9 & 15, PageID #629.) Nine notices remained undeliverable after address tracing. (ECF No. 45-2, ¶ 10, PageID #552; ECF No. 46-2, ¶ 10, PageID #629.) In other words, over 98% of class members received notice. These results show no fatal deficiencies in notice. Accordingly, the Court finds that the notice was the best practicable under

17

the circumstances, as required under Rule 23(c)(2)(B), and consistent with due process.

### III.B. Settlement Terms

Under Rule 23(e)(2), a court may approve a proposed class settlement "*only . . . after* considering whether" (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided is adequate; and (4) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D) (emphasis added). Before its amendment in 2018, the Rule simply required that, "[i]f the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2) (2017).

Since enactment of the amendment, some courts continue to apply only the factors the Sixth Circuit set out in *UAW*. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2022 WL 9990022, at *2 (N.D. Ohio Oct. 17, 2022); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2022 WL 16554651, at *3 (S.D. Ohio Oct. 31, 2022). But this approach overlooks the mandatory language of amended Rule 23(e)(2). Others apply the *UAW* factors *and* those listed in Rule 23(e)(2). *See, e.g.*, *Ware v. CKF Enterprises, Inc.*, No. 5:19-cv-183, 2020 WL 5087766, at *5 (E.D. Ky. Aug. 26, 2020); *Davis v. Omnicare, Inc.*, No. 5:18-cv-142, 2021 WL 4188053, at *5 (E.D. Ky. Sept. 14, 2021); *Robles v. Comtrak Logistics, Inc.*, No. 15-cv-2228, 2022 WL 17672639, at *8 (W.D. Tenn. Dec. 14, 2022). Following the amendment, the Sixth Circuit has decided only one relevant case. In *Does 1-2 v. Deja Vu Services, Inc.*, 925 F.3d 886, 894 (6th Cir. 2019), the Sixth Circuit applied the *UAW* factors, but it was

reviewing a settlement approved on June 19, 2017. Accordingly, the court had no occasion to consider the amended rule and, indeed, made no mention of it.

Although the advisory committee notes to the 2018 amendment state that the amendment to Rule 23(e)(2) "did not replace any [pre-existing] factors," *Moeller, et al., v. The Week Publ'ns, Inc.*, No. 1:22-cv-10666, 2023 WL 119648, at *5 n.1 (E.D. Mich. Jan. 6, 2023), the amendment sought "to focus the court and lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. Accordingly, the Court determines that the proper standard for approval of a class settlement under Rule 23(e)(2) begins with and requires the considerations listed in the Rule. In addition, the factors identified in *UAW* might have relevance on any particular set of facts. Where they do not, there is no occasion to consider them. Requiring consideration of an expanding list of factors would frustrate the advisory committee's goal of focusing the court's attention and "distract both the court and the parties from the central concerns that bear on review." *Id.*

In short, the "amendment therefore directs the parties to present the settlement to the court in terms of a shorter list of core concerns." *Id.* Counsel has done so by briefing only the Rule 23(e)(2) factors, implicitly maintaining that the additional *UAW* considerations do not apply. (ECF No. 38, PageID #257–66; ECF No. 39, PageID #387–96.) In this case, on the record presented, the Court agrees that none of the *UAW* factors apply and focuses its determination of the fairness,

19

reasonableness, and adequacy of the settlement on the considerations listed in Rule 23(e)(2).

### III.B.1. Adequate Representation

First, Rule 23(e)(2)(A) requires a court to consider the "actual performance" of class representatives and counsel. *See also* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment. This factor is "redundant of the requirements of Rule 23(a)(4) and Rule 23(g)." 4 *Newberg and Rubenstein on Class Actions* § 13:49 (6th ed.) Here, the named Plaintiffs and class counsel have performed adequately. Class counsel conducted substantial document review, engaged in contentious settlement negotiations, and recovered $ ███████ for Plaintiffs. (ECF No. 38-1, PageID #287; ECF No. 39-1, PageID #417; ECF No. 38-4, ¶ 22, PageID #353; ECF No. 39-3, ¶ 22, PageID #476; ECF No. 45-4, ¶ 16, PageID #582; ECF No. 46-4, ¶ 16, PageID #659.) The named Plaintiffs aided in the litigation by consulting with counsel, providing them with important information, and fielding inquiries from other class members. (ECF No. 38-4, ¶ 32, PageID #357; ECF No. 39-3, ¶ 32, PageID #480.) Accordingly, this factor favors approval.

### III.B.2. Arm's Length Negotiation

Next, the parties must negotiate the settlement at arm's length. Fed. R. Civ. P. 23(e)(2)(B). "This inquiry aims to root out . . . 'collusive settlements.'" 4 *Newberg and Rubenstein on Class Actions* § 13:50 (6th ed.); *see also UAW*, 497 F.3d at 631. In this case, the record contains no evidence of collusion. At each stage of the litigation, the parties engaged in an adversarial bargaining process. First, before settling, the parties exchanged substantial discovery. (ECF No. 45-4, ¶ 16, PageID #582; ECF

No. 46-4, ¶ 16, PageID #659.)  Second, the parties reached the settlement through a neutral mediator.  (ECF No. 38-4, ¶ 22, PageID #353; ECF No. 39-3, ¶ 22, PageID #476.)  Further, the parties spent the following three and a half months discussing and disputing the final terms of the settlement agreement.  (ECF No. 45-4, ¶ 17, PageID #583; ECF No. 46-4, ¶ 17, PageID #660.)  Therefore, the second factor is also satisfied.

### III.B.3. Adequate Relief

In assessing whether the relief is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).  With these additional factors in mind, the Court finds that the relief provided—$██████ to Rule 23 Subclass 1 and $██████ to Rule 23 Subclass 2—is adequate.  (ECF No. 38, PageID #260; ECF No. 39, PageID #390; ECF No. 38-1, PageID #294; ECF No. 39-1, PageID #424.)

### III.B.3.i. Costs, Risks, and Delay

In this case, the costs, risks, and delay of trial and appeal favor approval. FLSA collective actions and State-law class actions are "complex, and without settlement, the litigation would be lengthy and costly."  *Ware*, 2020 WL 5087766, at *5.  Moreover, there is a substantial risk that Plaintiffs' claims could fail.  Continued litigation presents two challenges.  First, Plaintiffs must prove that their case is suitable for class certification, which Defendant contests.  (ECF No. 38, PageID #267

n.3; ECF No. 39, PageID #397 n.3.)  Second, Plaintiffs must establish Defendant's liability and demonstrate damages.  (*See* ECF No. 15.)  The settlement avoids these obstacles and assures that Plaintiffs timely receive between about 32% and 53% of their alleged (but disputed) damages.  (*Compare* ECF No. 38, PageID #260 and ECF No. 39, PageID #390 (arguing that Rule 23 Subclass 1 members will receive an extra 7.95 minutes of pay per day worked), *with* ECF No. 1, ¶ 54, PageID #10 (alleging that Plaintiffs worked roughly fifteen to twenty-five extra minutes per day).)

### III.B.3.ii. Effectiveness of Distribution Method

The settlement's distribution method also supports approval.  This consideration requires the Court to ensure that claims processing (1) facilitates filing legitimate claims and (2) is not unduly demanding.  Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  The settlement agreement accomplishes each. It creates an opt-out class where all members who do not request exclusion will automatically obtain relief.  (ECF No. 38-1, PageID #296; ECF No. 39-1, PageID #426.)  In other words, class members need not submit claim forms or other documents to participate in the recovery.  Therefore, the Court finds that these procedures will likely capture legitimate claims and effectively distribute settlement checks.

### III.B.3.iii. Attorneys' Fees and Timing

This consideration directs a court to examine the attorneys' fees requested and the timing of their payment.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  In this case, class counsel seeks $███████ in attorneys' fees, which amounts to 32.6% of the settlement fund. (ECF No. 38-1, PageID #298; ECF No. 39-1, PageID #428; ECF No. 45, PageID #526;

ECF No. 46, PageID #604.)  Counsel will receive that amount alongside the classes' payments.  (*See* ECF No. 38-1, PageID #298; ECF No. 39-1, PageID #428.)  Thus far, counsel has invested 398.9 hours in pursuing this litigation.  (ECF No. 45-4, ¶ 18, PageID #583; ECF No. 46-4, ¶ 18, PageID #660.)  By its conclusion, that number will grow and come closer to 475 hours.  (ECF No. 45-4, ¶ 21, PageID #585; ECF No. 46-4, ¶ 21, PageID #662.)  Using the latter number of hours to account for follow-on post-approval work, counsel's lodestar amount is approximately $201,500.26.  (ECF No. 45, PageID #539; ECF No. 46, PageID #617.)  On this record, and for the reasons more fully discussed below, the Court finds that the requested attorneys' fees, and their timing, do not compromise the adequacy of relief.

### III.B.3.iv. Rule 23(e)(3) Agreements

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Fed. R. Civ. P. 23(e)(3).  Here, the only such agreement is the settlement itself.  (ECF No. 38, PageID #266; ECF No. 39, PageID #396.)  Accordingly, there is no risk that "related undertakings . . . may have influenced the terms of the settlement," and this sub-factor supports the adequacy of relief.  Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2003 amendment.

### III.B.4. Equitable Treatment of Class Members

Finally, the Court must determine whether the settlement agreement treats class members equitably.  Fed. R. Civ. P. 23(e)(2)(D).  This factor "ensure[s] that similarly situated class members are treated similarly."  4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed.).  Rule 23 Subclass 1 and Rule 23 Subclass 2 meet

23

that standard.  As to the former, class members receive a recovery proportional to the number of weeks they worked for Erico International from February 5, 2018, to April 18, 2020.  (ECF No. 38-1, PageID #286; ECF No. 39-1, PageID #416.)  This approach "takes appropriate account of differences among [each class member's] claims," specifically how much unpaid overtime class members allegedly accrued.  *See* Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.  And the members of Rule 23 Subclass 2 all receive the same amount—$██████—to cover the release of their claims.  (*See* ECF No. 45-3; ECF No. 46-3.)

Arguably, the largest cause for concern lies in the named Plaintiffs' service awards.  Those awards create a $██████ to $██████ce in recovery between them and the unnamed class members.  (*See* ECF No. 38-1, PageID #300; ECF No. 39-1, PageID #430.)  However, the Court remains unpersuaded that these awards raise issues of equity within the meaning of Rule 23(e)(2).  In this regard, the named Plaintiffs are not similarly situated to the other class members.  4 *Newberg and Rubenstein on Class Actions* § 13:56 (6th ed.).  They performed extra work.  (ECF No. 38-4, ¶ 32, PageID #357; ECF No. 39-3, ¶ 32, PageID #480.)  And the service awards do not unfairly enrich the named Plaintiffs at the expense of other class members.  Because the settlement agreement treats class members equitably, the fourth factor is met.

*    *    *

The factors listed in Rule 23(e)(2) favor final approval.  Therefore, the Court **APPROVES** the payments of $██████ to Rule 23 Subclass 1 and $██████ to Rule 23 Subclass 2 as fair, reasonable, and adequate.  In accepting these terms, the

24

Court **APPROVES** the release of Plaintiffs' claims as provided in the settlement agreement.

## IV.     Attorneys' Fees

Class counsel requests an award of attorneys' fees of $ ████████. (ECF No. 45, PageID #526–40; ECF No. 46, PageID #604–17.)  Rule 23(h) permits courts to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Further, "the FLSA and Ohio Constitution provide the right to reasonable attorneys' fees for a party who recovers unpaid wages." *Harsh*, 2021 WL 4145720, at *7 (citing 29 U.S.C. § 216(b); Ohio Const. art. II, Section 34a).  "Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation." *Gresky v. Checker Notions Co. Inc.*, No. 3:21-cv-01203, 2022 WL 3700739, at *7 (N.D. Ohio Aug. 26, 2022) (citing *Harsh*, 2021 WL 4145720, at *7).  Accordingly, the Court must ensure that "counsel is fairly compensated for the amount of work done as well as for the results achieved." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

District courts can choose between two methods when analyzing a request for attorneys' fees:  (1) the percentage-of-the-fund method or (2) the lodestar method. *Id.* at 517.  "The lodestar method better accounts for the amount of work done, while the percentage-of-the-fund method more accurately reflects the results achieved." *Id.* at 516.  Which method a court employs falls within its discretion based on the "unique circumstances of the actual case[ ] before [it]." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 501 (6th Cir. 2011).

Here, the Court adopts the lodestar method with a percentage-of-the-fund crosscheck. In the Court's view, such an approach generally achieves the goals of fee-shifting statutes while fairly compensating class counsel for their work without creating a windfall or other unanticipated consequences. Some criticize the lodestar approach as too time-consuming. *See, e.g.*, *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993). Whatever merit that criticism might hold in some more sprawling or complicated cases, it has no force in a dispute such as this. Here, the Court need only evaluate the time sheets and rates of three attorneys. Further, although optional, the Court finds a percentage-of-the-fund crosscheck appropriate given that method's preference in common-fund settlements. *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 281 (6th Cir. 2016); s*ee also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (collecting cases).

### IV.A. Lodestar Method

The lodestar method involves two steps. First, the Court calculates the lodestar figure by multiplying the number of reasonable hours spent on the litigation by the reasonable hourly rate for each attorney. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). Second, the Court determines whether it should adjust that figure considering the factors outlined in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *See Reed*, 179 F.3d at 471; *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 795 (N.D. Ohio 2010).

### IV.A.1. The Lodestar Figure

The party seeking attorneys' fees must provide the Court sufficient documentation to determine the lodestar figure. *Reed*, 179 F.3d at 472 (citing *Webb*

*v. Dyer Cnty. Bd. of Educ.*, 471 U.S. 234, 242 (1985)).  In other words, counsel must "enable the court to determine with a high degree of certainty that [their] hours were actually and reasonably expended in the prosecution of the litigation."  *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 553 (6th Cir. 2008) (quoting *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Loc. 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984).  In this case, class counsel has provided a declaration outlining their hours worked and hourly rates. (*See* ECF No. 45-4; ECF No. 46-4.)

### IV.A.1.i. Hours Worked

As of December 8, 2022, counsel spent approximately 398.9 hours on this case. (ECF No. 45-4, ¶ 18, PageID #583; ECF No. 46-4, ¶ 18, PageID #660) (specifying that Mr. Scott spent 53.8 hours, Mr. Winters spent 84.4 hours, and Mr. McDermott spent 260.7 hours on the case).  Those 398.9 hours include pre-litigation investigation; preparation of the complaint; responses to inquiries; substantial document review; mediation preparation; and contentious negotiations.  (ECF No. 45-4, ¶¶ 14–17, PageID #581–83; ECF No. 46-4, ¶¶ 14–17, PageID #658–60.)  Since then, counsel has spent approximately 30 more hours finalizing their motion for final approval and preparing for and participating in the fairness hearing, among other tasks.  (ECF No. 45-4, ¶ 21, PageID #585; ECF No. 46-4, ¶ 21, PageID #662.)  And counsel will likely perform more work.  Following final approval, counsel will monitor the settlement's administration and respond to inquiries from class members, accounting for an estimated additional eight hours of time per month.  (ECF No. 45-4, ¶ 20, PageID #584–85; ECF No. 46-4, ¶ 21, PageID #661–62.)  Having reviewed counsel's

declaration, and based on the record, the Court cannot say these 476.9 hours (398.9+30+48) are unreasonable.

### IV.A.1.ii. Hourly Rates

With respect to rates, Mr. Scott used an hourly rate of $500.00, Mr. Winters $425.00, and Mr. McDermott $400.00.  (ECF No. 45-4, ¶ 10, PageID #579; ECF No. 46-4, ¶ 10, PageID #656.)  Also relevant is counsel's average hourly rate— $441.67—because that amount applies to future work.  Whether the Court adopts these rates depends on whether they align with the prevailing market rate in this community.  *See Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000).  They do.  Class counsel has significant experience in complex civil wage litigation.  (ECF No. 45-4, ¶ 5, PageID #577; ECF No. 46-4, ¶ 5, PageID #654.)  And courts in this Circuit have previously approved similar hourly rates as reasonable for attorneys with similar experience and expertise.  *See, e.g.*, *Gresky*, 2022 WL 3700739, at *8; *Foster v. Residential Programs, Inc.*, No. 2:19-cv-2358, 2021 WL 664055, at *4 (S.D. Ohio Feb. 18, 2021).

*       *       *

Using class counsel's approved hours worked and hourly rates, the following table outlines the lodestar figure:

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Joseph F. Scott | $500 | 53.8 | $26,900.00 |
| Ryan A. Winters | $425 | 84.4 | $35,870.00 |
| Kevin M. McDermott, II | $400 | 260.7 | $104,280.00 |

| | $441.67 (average rate) | 78.0 | $34,450.26 |
|---|---|---|---|
| **Total:** | | 476.9 | $201,500.26 |

(ECF No. 45-4, ¶¶ 18 & 20–21; PageID #583 & #584–85; ECF No. 46-4, ¶¶ 18 & 20–21; PageID #660 & #661–62.)

Accordingly, the Court finds that the lodestar figure is $201,500.26.

### IV.A.2. The Lodestar Multiplier and *Ramey*

Given their request for an award of attorneys' fees of $███████, counsel effectively asks that the Court apply a multiplier of 1.29 to that lodestar figure. (*See* ECF No. 45, PageID #539; ECF No. 46, PageID #617.) "[E]nhancing the lodestar with a separate multiplier can . . . account for the risk an attorney assumes in undertaking a case, the quality of the attorney's work product, and the public benefit achieved." *Rawlings*, 9 F.3d at 516. To determine whether a multiplier is appropriate, courts weigh six factors. *Reed*, 179 F.3d at 471; *Lonardo*, 706 F. Supp. 2d at 795. They are: (1) the value of the benefit rendered; (2) society's stake in rewarding attorneys who produce such benefits to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey*, 508 F.2d at 1196.

Although there is no precise formula for weighing these factors, *Satterly v. Airstream, Inc.*, No. 3:19-cv-107, 2020 WL 6536342, at *10 (S.D. Ohio Sept. 25, 2020) (citation omitted), courts refer to the first and fourth as the most important. *See, e.g.*, *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996) (citing *Rawlings*, 9

29

F.3d at 516); *In re Sulzer Hip Prosthesis & Knee Prosthesis Liab. Litig.*, 268 F. Supp. 2d 907, 930 (N.D. Ohio 2003) (citations omitted). Here, both support applying the multiplier.

Regarding the value of the benefit rendered, Plaintiffs stand to receive significant benefits. Members of Rule 23 Subclass 1 will receive approximately 32% to 53% of their alleged but disputed damages. (*Compare* ECF No. 38, PageID #260 and ECF No. 39, PageID #390 (arguing that Rule 23 Subclass 1 members will receive an extra 7.95 minutes of pay per day worked), *with* ECF No. 1, ¶ 54, PageID #10 (alleging that Plaintiffs worked roughly fifteen to twenty-five extra minutes per day).) That percentage exceeds the 7% to 11% average result for class members. *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010). Although members of Rule 23 Subclass 2 will receive nominal consideration for releasing their claims, Defendant denies that they suffered any damages at all. (*See* ECF No. 45-3; ECF No. 46-3.) Further reinforcing the benefit conferred, no class member requested exclusion from the settlement. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 675 (S.D. Ohio 2007).

As for the value of counsel's services on an hourly basis, according to the Court's calculations, counsel has or will perform over 475 hours of work. (ECF No. 45-4, ¶¶ 18 & 21, PageID #583 & #584–85; ECF No. 46-4, ¶¶ 18 & 21, PageID #660 & #661–62.) Applying the applicable hourly rates equates to $201,500.26 in legal fees. A multiplier of 1.29 does not render the value of these services unreasonable. In wage and hour collective and class actions, courts generally

approve lodestar multipliers between 1 and 3. *O'Bryant v. ABC Phones of N. Carolina, Inc.*, No. 19-cv-02378, 2021 WL 5016872, at *6 (W.D. Tenn. Oct. 28, 2021) (collecting cases). The Court finds that the proposed multiplier adequately accounts for the risks counsel assumed in undertaking this case. Therefore, the significant value of counsel's services also supports accepting the proposed multiplier.

So too, for the remaining four factors. First, society benefits when attorneys take on class actions involving claimants that would otherwise be unable to vindicate their rights. *Harsh*, 2021 WL 4145720, at *9. Second, counsel incurred risk by taking this case on a contingent fee basis. (ECF No. 45-4, ¶ 9, PageID #578; ECF No. 46-4, ¶ 9, PageID #655.) Third, this case was particularly complex given its nature, *Barnes*, 2019 WL 1614822, at *6, and the amount of information—millions of data points— that needed to be analyzed. (ECF No. 45-4, ¶ 16, PageID #582; ECF No. 46-4, ¶ 16, PageID #659.) Finally, all counsel is highly qualified and experienced. (*See* ECF No. 45-4, ¶ 5, PageID #577; ECF No. 46-4, ¶ 5, PageID #654.)

Because the *Ramey* factors favor a multiplier, the Court adopts the requested multiplier of 1.29.

### IV.B.  Percentage-of-the-Fund Cross Check

The percentage-of-the-fund method requires courts to calculate the ratio between the attorneys' fees and the total benefit to the class. *Gascho*, 822 F.3d at 282. The latter can include attorneys' fees and the related costs of litigation. *Id.* In this case, the requested attorneys' fees ($█████) are 32.6% of the total benefit to the class ($█████). As demonstrated in the parties' brief, 32.6% is slightly below one-third, an amount that courts in this Circuit have consistently approved in

complex wage and hour cases. *See Rotuna v. West Customer Mgmt. Grp., LLC*, No. 4:09-cv-1608, 2010 WL 2490989, at *8 (N.D. Ohio June 15, 2010) (collecting cases). The Court sees no compelling reason to do otherwise here. Accordingly, the percentage-of-the-fund cross check confirms that the $███████ estar figure, including the multiplier, represents a reasonable award of attorneys' fees.

*     *     *

Because counsel's requested fee is reasonable under the lodestar and percentage-of-the-fund method, the Court **AWARDS** class counsel $███████ in attorneys' fees.

## V.     Litigation Expenses and Administration Costs

Class counsel also ask the Court to approve payments of $██████ and $██████ to cover litigation expenses and settlement administration costs, respectively. (ECF No. 38-1, PageID #282, #298, & #304; ECF No. 39-1, PageID #412, #428, & #434.) Generally, class counsel are entitled to reimbursement of all reasonable and necessary expenses, including class-notice costs, incurred in the prosecution and settlement of the claims. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. at 535; *see also Thompson v. Seagle Pizza, Inc.*, No. 3:20-cv-16, 2022 WL 1431084, at *13 (W.D. Ky. May 5, 2022).

In this case, the $██████ in litigation expenses covers the case filing fee, service costs, postage, and mediation-related fees. (ECF No. 45-4, ¶ 23, PageID #586; ECF No. 46-4, ¶ 23, PageID #663.) Further, the $██████ covers the "total cost for the administration of [the settlement]," including the preparation and shipment of class notices and the drafting and mailing of payment checks. (ECF No. 45-2, ¶¶ 3 &

16, PageID #550–51 & #553; ECF No. 46-2, ¶¶ 3 & 16, PageID #627–28 & #630.)  The Court finds these expenses necessary for the claim's prosecution and settlement. Moreover, they are reasonable "as they are in line with expenses and administration fees incurred in similar litigation."  *Clark*, 2022 WL 16554651, at *7; *see also Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 WL 1966062, at *7 (S.D. Ohio May 17, 2021).

Therefore, the Court **APPROVES** the payment of $ ▮▮▮▮▮ in litigation expenses and $ ▮▮▮▮▮ in settlement administration costs.

## VI.    Service Awards

Finally, the parties request that the Court approve service awards of $ ▮▮▮▮▮ to Mr. McKnight, and $ ▮▮▮▮▮ to the other named Plaintiffs.  (ECF No. 45, PageID #518; ECF No. 46, PageID #596.)  Service awards are "awards to class representatives for their often extensive involvement with a lawsuit."  *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).  They "encourag[e] members of a class to become class representatives and reward[ ] individual efforts."  *Id.*  However, they are not accepted by every circuit.  *See, e.g.*, *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244, 1255–61 (11th Cir. 2020).  There is an ongoing debate about whether a pair of nineteenth-century Supreme Court cases—*Trustees v. Greenough*, 105 U.S. 527 (1881), and *Central Railroad v. Pettus*, 113 U.S. 116 (1885)—prohibit service awards. *See Johnson*, 975 F.3d at 1255–61; *Murray v. Grocery Delivery E-Servs. USA Inc.*, 55 F.4th 340 (1st Cir. 2022); *Hyland v. Navient Corp.*, 48 F.4th 110, 123–24 (2d Cir. 2022); *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785–87 (9th Cir. 2022).

For its part, the Sixth Circuit has neither approved nor disapproved the practice of service awards to class representatives. *In re Southern Ohio Corr. Facility*, 24 F. App'x 520, 526 (6th Cir. 2001); *Hadix*, 322 F.3d at 897. But it has recognized that "there may be circumstances where incentive awards are appropriate." *Hadix*, 322 F.3d at 898. Accordingly, district courts have authorized service awards based on class representatives' procured benefits, financial risks, and time expended. *See Barnes*, 2019 WL 1614822, at *6; *Ross v. Jack Rabbit Servs., LLC*, No. 3:14-cv-44, 2016 WL 7320890, at *5 (W.D. Ky. Dec. 15, 2016).

Because the parties agreed in the settlement to service awards, and no person objected, the Court has no occasion to wade into the ongoing debate over whether the law permits such awards. Instead, based on the parties' agreement and absence of an objection, the Court will grant the service awards in this case. Mr. McKnight incurred substantial financial risks and expended significant time by instituting this litigation, responding to phone calls and inquiries from other potential class members, and attending the mediation and fairness hearing. (ECF No. 38-4, ¶ 32, PageID #357; ECF No. 39-3, ¶ 32, PageID #480.) So did the other named Plaintiffs. They consulted with class counsel at critical stages and provided important and necessary documents. (*Id.*)

Because of the nature of the named Plaintiffs' involvement, the Court **APPROVES** the requested service awards.

34

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the parties' joint motion for class certification, final approval of the settlement, and associated relief (ECF No. 45; ECF No. 46).   In doing so, the Court orders that the settlement agreement be implemented according to its terms and conditions and:

**CERTIFIES** Rule 23 Subclass 1 and Rule 23 Subclass 2 as classes;

**APPOINTS** Scott & Winters Law Firm, LLC as class counsel;

**APPROVES** settlement of the FLSA collective action;

**APPROVES** the payment of $████████ to Rule 23 Subclass 1 and $████████ to Rule 23 Subclass 2;

**APPROVES** the release of Plaintiffs' claims;

**AWARDS** Scott & Winters Law Firm, LLC $████████ in attorneys' fees;

**APPROVES** the payment of $██████ in litigation expenses and $████████ in settlement administration costs; and

**APPROVES** the $██████ service award to Mr. McKnight and the $██████ awards to the other named plaintiffs.

Further, the Court **DISMISSES** this action **WITH PREJUDICE**.   As the parties request, the Court retains jurisdiction to enforce the terms of the settlement and resolve any related disputes.

**SO ORDERED.**

Dated:  February 8, 2023

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio